117 Cal.App.2d 612 (1953)
Estate of LOUISA GUASTI, Deceased. TITLE INSURANCE AND TRUST COMPANY, Respondent,
v.
SECONDO GUASTI III et al., Appellants.
Civ. No. 19462. 
California Court of Appeals. Second Dist., Div. Two. 
May 4, 1953.
 Royal M. Galvin and George C. Bliss for Appellants.
 O'Melveny & Myers, Louis W. Myers and Adrian C. Stanton for Respondent. *613
 MOORE, P. J.
 By her last will probated June 18, 1937, decedent created a testamentary trust for the benefit of two grandsons, the appellants. By paragraph XXV she provided:
 "The following schedule of charges has been agreed upon between Title Insurance and Trust Company and myself for its services as such Trustee hereunder: Two-fifths (2/5) of one per cent (1%) for all moneys that are invested in government securities, and three-fifths (3/5) of one per cent (1%) where the trust fund is composed of other and different securities or other property of every character. I furthermore direct that said Title Insurance and Trust Company, as Trustee, present and serve upon each other co-Trustee a semiannual statement of the condition of said trusts at the time of the rendering of such statement."
 On December 4, 1951, Title Insurance and Trust Company filed its eleventh account current with petition for approval and allowance of trustee's fees. Objections thereto were filed by appellants on the ground that in fixing its fees, the trustee had reevaluated certain assets of the trust estates based on their market value in 1951. The objections were overruled and the court heard proof of the circumstances surrounding the publishing of the will and ultimately determined that it is customary in Los Angeles for trust companies, banks and like institutions in handling testamentary trusts to re- evaluate the assets in the trust estate at least once a year for the purpose of assisting them in determining their annual fees, and held that the trustee was justified in re-evaluating the assets of the trust estate herein for the purpose of computing the trustee's fees due on the eleventh account current.
 Was such holding error?
 There are two trusts: one for Secondo inventoried at $243,201.72; one for William in the sum of $256,981.27. Of Secondo's, $59,571.01 is invested in government bonds; $183,630.71 consists of cash and securities other than government bonds. Pursuant to the rule of paragraph XXV appellants contend the trustee should have reported its fees as two fifths of one per cent on the government bonds at $238.28, and three fifths of one per cent of $183,630.71 at $1,101.78. The latter sum is derived from computing the trustee's fee on Secondo's trust estate at the "carrying" or inventoried values of the assets, which makes a total of $1,340.06. But basing the computation of the reevaluations of the cash and securities other than government bonds, the total fees on *614 Secondo's trust amounted to $2,017.44 which is $677.38 in excess of the fees computed on the inventoried values. By similar process the trust estate of William, consisting of government bonds $58,579.64 and cash and other securities inventoried at $198,401.68, paid the trustee $603.87 more than it would have paid if the fee had been based on the inventoried values of the assets of his trust estate.
 [1a] Appellants contend that (1) by the terms of the will the trustee's compensation is strictly limited and (2) the intention of the testatrix should govern in interpreting her final testament. While the language of that writing is an important key in interpreting the agreement referred to in paragraph XXV, it does not afford the sole device for ascertaining the meaning of the contract. The duties contemplated for the trustee must also be considered.
 In appointing trustees for the trusts the testatrix intended not that the trustees lock the cash and securities in a safety box and report their earnings periodically, but, on the contrary, by paragraph XXII she imposed upon the trustee the duty to "collect the income, rents, issues and profits of the trust and after the payments and deductions" designated in the will to "invest or apply and distribute the same for the use and benefit of the beneficiaries ... [and] in the event the residue contains property other than money ... to liquidate the said property and convert the same into money at such times and for such sums as in their judgment will be for the best interests of said estate, with the end in view of augmenting said trust fund, and for that purpose the express power of sale is hereby granted to said Trustees to sell on such terms and conditions and for such amounts as in their judgment they deem for the best interests of said trust fund." (Emphasis added.)
 By the above-quoted terms the testatrix placed squarely upon the trustees the burden of "augmenting the trust fund" by the exercise of their judgment along several avenues of their official activities. They were by such obligation required to be informed with respect to the values of real estate and of those securities in which they might invest, in the values of oil- bearing lands and petroleum products and to be acquainted with the world's petroleum production. Unless the trustees so perform their obligations as to be able to contribute to the growth of the corpus of the trust, they do not faithfully fill the office they hold. But in the event of their *615 exercise of an intelligent judgment to the advantage of the trust estates, they are entitled to consideration therefor in the determination of their annual compensation as trustees. If they increase the trust fund from year to year, it is only fair that the amount of such increment constitute a part of the fund upon which the computation of their fees be made. While the trustees would have acted within their instructions had they in 1939 sold all the shares of Standard Oil of California held in the trust estates, the latter would be now bereft of more than $60,000 if the shares had been sold at that time. Moreover, by virtue of the exercise of industry and good judgment the trustees acquired 2,210 other shares of the same company. The increase of the value of such shares has served to add substantially to the trust estates.
 It is not intended by the foregoing to construe the contract as a specific promise to pay the trustees more for their services in proportion to the increment of the trust estate, but it suffices as another reason for holding that the trustee was justified in re-evaluating the assets of the estate to derive a just basis for computing its annual fees.
 The assets of the trust estates have, by virtue of the judgment exercised by the surviving trustee, increased noticeably over their inventoried values. Such growth cannot in justice be ignored in determining the annual fees due the trustee. Proof of the exercise of a high order of fidelity and efficiency is everywhere deemed a relevant factor in fixing the compensation of a confidential agent. If, in the action at bar, the assets be found to have shrunk in value at the close of a year, the fees of the trustee should be less; if they are found to have increased, the fees should be more. The custom provided to have been in vogue in Los Angeles during the period after the establishment of the trust estates is, therefore, reasonable and just and is its own reason for its advent.
 Appellants overemphasize the importance of the intention of the testatrix in determining the meaning of paragraph XXV. But in construing the contract "agreed upon" by the testatrix and her trustees we are to ascertain the mutual intention of both parties. (Lane v. Gluckauf, 28 Cal. 288, 294 [87 Am.Dec. 121].) Such intention is not always ascertainable from a consideration of what one party said or from what both said of the intention at the time of the contract. The mutual intention is, in the case of uncertainties, to be *616 inferred from the "circumstances under which it was made, and the matter to which it relates." (Civ. Code, 1647.)
 In finding what the contract was when the testatrix declared that the schedule of charges had been "agreed upon between Title Insurance ... and her where the trust fund is composed of other and different securities or other property of every character," it became necessary for the court to consider the "circumstance" that it is the general custom of testamentary trustees to evaluate the assets of the trust funds yearly in order to derive a new basis for computing the trustee's fees. Not only did Title Insurance and Trust Company know that custom, but from his vast experience in handling testamentary trusts, testatrix' attorney, Mr. O'Melveny, must have known it. It was therefore proper for the uncertainty of the agreement to be cured by proof of such custom. Because paragraph XXV provides for the trustee to receive three fifths of one per cent of the assets, excluding government bonds, and says nothing as to the time when the assets shall be re-evaluated or the frequency of the new appraisement, evidence of the custom of Los Angeles trust companies was indispensable.
 Appellants objected to the introduction of the proof of such custom and now assign as error the court's order in overruling their objection. [2] That the ruling was correct is established by the decisions that "general usage, when not in contravention of law, is of governing force." (Luckehe v. First Nat. Bank of Marysville, 193 Cal. 184, 190 [223 P. 547]; Gonyer v. Williams, 168 Cal. 452, 456 [143 P. 736].) In the Luckehe case, where the bank was employed to collect a draft, the court held not only that the bank's usage was admissible but expressly decided that where one selects a bank as a collecting agent, he, in the absence of special direction, is bound by any reasonable usage established among the banks at the place where the collection is made, despite his ignorance of such custom.
 [1b] Not only was the proof of custom properly received as an aid to interpret the contract as requiring an annual re-evaluation of the assets, but the conduct of appellants in consenting to such procedure over a period of 10 years amounts to a fixed policy and an acceptance of the custom as a guiding rule for the trustee. True, for portions of that time they were minors and in military service. But while under age their guardians with the court's approval represented them. *617 Both appellants attained their majorities after having been discharged from the military service: Secondo became 21 in October, 1946; William in March, 1948. Therefore, their consent for three years, and the conduct of their guardian for the prior seven years in approving the payment of trustee's fees on the re-evaluation of the assets, establish appellants' construction of the contract to be the contrary of what they now contend. Appellants by their own behavior induced the finding of the custom of banks and trust companies. (Universal Sales Corp., Ltd. v. California Press Manufacturing Co., 20 Cal.2d 751, 761 [128 P.2d 665]; Mitau v. Roddan, 149 Cal. 1, 13 [84 P. 145, 6 L.R.A.N.S. 275].) [3] It is the duty of the court to give effect to the intention of the parties where it is not wholly at variance with the correct legal interpretation of the contract. The parties to a transaction are assumed to know best what was intended by the agreement under which they have acted. They are less likely to have been mistaken as to their intention during the period while harmony prevails than they are after subsequent differences have brought them into a legal controversy. (See Mitau v. Roddan, supra.)
 Appellants advance the thesis that this court is not bound by the finding which construes the contract in favor of the trustee. Not only do the facts and the law justify the correctness of the trial court's conclusions but we are bound by its construction of the contract. Appellants have apparently not read with care Estate of Platt, 21 Cal.2d 343, 353 [131 P.2d 825]. That decision dealt with a written contract. There was no conflict of inferences. The appellate court could therefore interpret it without the aid of findings. [4a] But where parol proof is admitted for the purpose of assisting the court to ascertain the intention of the parties and where conflicting inferences may be drawn, it is the constitutional function and duty of the trial court to determine the meaning of the parties and such finding is binding on the reviewing court. [5] The intent of the contracting parties to an agreement becomes a legal question only when from the evidence but one tenable conclusion can be reached. (Estate of Rule, 25 Cal.2d 1, 11 [152 P.2d 1003, 155 A.L.R. 1319].) [4b] Therefore, when the construction of an oral contract or of an uncertain written agreement is with the aid of testimony not unreasonable or inconsistent with the evidence, the conclusion of the trial court will not be disturbed. (McKee v. Lynch, 40 Cal.App.2d 216, 226 [104 P.2d 675].) *618
 Concerning the trustee's alleged error of $26.64 in computing the fees due on Secondo's estate, the rule of de minimis applies. The order will not be reversed on that account.
 The order is affirmed.
 McComb, J., and Fox, J., concurred.