[Civ. No. 23198. Second Dist., Div. Two. Nov. 17, 1958.]

NORMAN J. MANGINI, Appellant, v. WOLFSCHMIDT, LIMITED (a Corporation), Respondent.

J. Albert Hutchinson for Appellant.

Lawler, Felix & Hall and John M. Hall for Respondent.

HERNDON, J.—Plaintiff appeals from certain portions of the judgment rendered in a nonjury trial in which he sought recovery of damages for alleged breaches of a contract.

Plaintiff is a licensed liquor manufacturer's agent and defendant is a liquor manufacturer and importer. In his complaint plaintiff alleged: that in July, 1954, he and the defendant ". . . entered into an oral contract by the terms of

which defendant undertook and agreed to employ, and did employ, plaintiff as its exclusive selling agent . . ." within a described territory in the southern portion of California, and to pay plaintiff as compensation a specified commission; that by the terms of the contract it was further agreed ". . . that plaintiff should become and remain the sole and exclusive selling agent and should have and retain the exclusive right of sale of defendant's said products in said territory as long as plaintiff should continue to use his best efforts to promote and solicit the sale of defendant's products therein; that said oral contract was duly confirmed by defendant in its certain writing dated July 19, 1954 . . ." a copy of which was appended as an exhibit to the complaint and is set out in full in the margin.[1]

The complaint further alleged that plaintiff fully and faithfully performed the contract until May 31, 1955, but that on May 23, 1955, defendant wrongfully and without excuse or justification breached and repudiated the contract by writing him a letter reading as follows: "This is to confirm our

---

[1]"July 19, 1954

"Mr. Norman J. Mangini
1025 North Highland Avenue
Los Angeles 38, California

"Dear Norman:

"We have the pleasure to confirm herewith the following understanding between us:

"(1) We are appointing you as our representative for Southern California, effective immediately.

"(2) You will represent our Vodka and Kummel products. It is understood, of course, that you are not representing any other brand of Vodka.

"(3) We will compensate you with a brokerage commission, monthly, on all depletions of sales of our brand by all our distributors in Southern California, as follows:

 (a) For the first 500 cases, monthly depletion . . . . . . . . . $ .50 per case
 (b) For the next 500 cases . . . . . . . . . . . . . . . . . . . . . . . . 1.00 per case
 (c) Over 1,000 cases, monthly . . . . . . . . . . . . . . . . . . . . . . .50 per case
 Commission will be paid to you on sales beginning July 1, 1954.

In regard to the Kummel, we will pay you commission of $1.50 per case.

"You will undertake the postings of prices for our brand with the State Liquor authorities of California direct, or through one of our distributors. It is understood that any new changes in prices for posting will be taken up with us in ample time before such posting.

"We are appointing Mr. Charles E. Jetel of Los Angeles as a Special Promotion Man for our brand. Mr. Jetel will work under your supervision and coordination.

"It is acceptable to us that you and Mr. Jetel use for sampling purposes for the trade, at present, one and one-half cases of Vodka in pints

advice to you that we are discontinuing you as a broker for the sale of our products effective May 31st, 1955.''

By the first cause of action of his complaint, plaintiff seeks recovery of the sum of $15,000 as damages for the ''breaches and repudiation of said contract'' and the further sum of $1,675 for unpaid commissions on orders accepted by defendant prior to May 31, 1955. By his second cause of action, plaintiff seeks an accounting from defendant with respect to sales made by defendant on or after May 31, 1955, in ''plaintiff's exclusive territory.'' The third cause of action may be disregarded since the portion of the judgment allowing plaintiff compensation for the special services therein alleged is not questioned on this appeal.

It is to be specially noted that the letter of July 19, 1954, the writing by which, according to the complaint, the oral contract was ''confirmed''—is entirely silent as to the term or duration of plaintiff's employment. Defendant's answer admitted ''. . . a contract which was evidenced by the letter . . .'' and the trial court found that the parties ''. . . entered into a written contract, a true copy of which is annexed to the complaint. . . .''

At the trial, for the avowed purpose of proving an agreement concerning the duration of the agency, plaintiff sought to testify to certain conversations between himself and Mr. Morrell, defendant's president, which preceded delivery of the writing. After reference had been made to one of these conversations, the direct examination of plaintiff proceeded as follows: ''Q. Now, in your discussion at that time with Mr. Morrill did you and he discuss the terms or conditions of the relationship you had in mind before this was delivered? A. Yes, we did. Q. Would you state what it was in regard, first as to the question of the duration of the relationship. MR. HALL: That is objected to as calling for that which would vary

or half pint size, or other sizes, but the total not to exceed 4.5 gallons. This will be drawn by you on our account from Alfred Hart Distilleries, Inc.

''I sincerely hope that our understanding will lead to fruitful and larger turnovers in our brand in Southern California to our mutual benefit.

''Wishing you good luck, I remain

''Yours very sincerely,
WOLFSCHMIDT Limited
Samuel M. Morrell
Samuel M. Morrell
President''

or add to the terms of an unambiguous written document and as being incompetent, irrelevant and immaterial.''

Defendant's objection that the admission of such testimony would violate the parol evidence rule was sustained. Plaintiff made rather extensive offers of proof relative to the substance of said antecedent conversations and the circumstances attending the negotiation of the contract. Among other things, plaintiff offered to prove the following: (1) Plaintiff's statement to Mr. Morrell to the effect that plaintiff would not be interested in the agency ''. . . unless it were on a basis in which he would have an exclusive territory and be assured of a continuation as long as he performed his function adequately; that the product had been on the market and had been mistreated and it would take a minimum of three years to put it on a paying basis from the plaintiff's point of view; . . .'' (2) That both plaintiff and Mr. Morrell ''. . . stated in the affirmative that it would take a long time to establish what was then not an unknown but a product that had been badly treated in the market, as they expressed it, there having been five preceding agents who attempted to put it over in the California market. . . . [T]hat it would take a minimum of three years to reach the point where sales would be compensatory, . . . that the contemplated gross sales would be between ten and twenty thousand cases per month by the end of that three-year period, and that only thereafter would the plaintiff have a chance to secure any real reimbursement. . . .'' (3) That it was agreed between Mr. Morrell and plaintiff ''. . . that a so-called promotion man, named Jetel, would be employed by the defendant for the purpose of assisting the plaintiff in pioneering this vodka group of products; that it was suggested by Mr. Morrill that Mr. Jetel be hired six months or later after the time of the conversation and the plaintiff suggested that it be done earlier and offered to Mr. Morrill the suggestion that he would forego one-half of his commission on the first 500 cases per month, which might be paid over to Mr. Jetel by the defendant and at all times that Mr. Jetel would be under the supervision of the plaintiff, though an employee of the defendant, . . .''

The essence of plaintiff's position on this appeal is stated as follows in his opening brief: ''Substantively, it was and is plaintiff's submission that he had alleged and could prove, first, that the contract should endure and continue as long as he used his best efforts to promote the sale and solicit sales of

defendant's products in his exclusive territories; and, alternatively, the contract in the circumstances in contemplation was to endure for a reasonable time and could be unilaterally terminated only upon reasonable notice, such reasonable time and notice exceeding the ten months' duration and the seven days' notice herein.'' Thus, the controlling question on this aspect of the case is whether it properly can be declared as a matter of law that the instant writing imports on its face to be such a complete expression of the whole agreement as to require exclusion of parol evidence offered to prove an additional contractual provision covering a matter as to which the writing is silent. (See 3 Williston, Contracts, p. 1821, § 633 (rev. ed. 1936).)

The parol evidence rule is a principle of substantive law that when the parties have embodied the terms of an agreement in writing, that writing becomes the contract of the parties and it may not be varied or supplemented by evidence of prior or contemporaneous negotiations of the parties. (*Estate of Gaines*, 15 Cal.2d 255, 264-265 [100 P.2d 1055]; *Hale* v. *Bohannon*, 38 Cal.2d 458, 465 [241 P.2d 4].) ''The rule comes into operation when there is a single and final memorial of the understanding of the parties. When that takes place, prior and contemporaneous negotiations . . . are excluded; or, as it is sometimes said, the written memorial supersedes these prior or contemporaneous negotiations.'' (*Estate of Gaines, supra*, 15 Cal.2d 255, 265; *Dillon* v. *Sumner*, 153 Cal.App.2d 639, 643 [315 P.2d 84].) The parol evidence rule has been incorporated into our codes. (Code Civ. Proc., § 1856; Civ. Code, § 1625.)

However, certain limitations upon the application of the parol evidence rule are well recognized. As stated in *Ellis* v. *Klaff*, 96 Cal.App.2d 471, 476 [216 P.2d 15]: ''The parol evidence rule is a principle of substantive law, premised upon the hypothesis that when the parties have voluntarily expressed their agreement in written form, the writing represents a complete integration of their understanding. (Wigmore on Evidence, vol. 9, § 2425, p. 76.) It is not calculated to, nor does it in practice, exert any compulsion upon the parties to put their entire understanding in writing. (*Lande* v. *Southern Cal. Freight Lines*, 85 Cal.App.2d 416, 420 [193 P.2d 144].) It does not, therefore, render inadmissible proof of contemporaneous oral agreements collateral to, and not inconsistent with, a written contract where the latter is either incomplete or silent on the subject, and the

circumstances justify an inference that it was not intended to constitute a final inclusive statement of the transaction. (*Crawford* v. *France*, 219 Cal. 439, 443-445 [27 P.2d 645] ; *Weil* v. *California Bank*, 219 Cal. 538 [27 P.2d 904] ; *Van Slyke* v. *Broadway Ins. Co.*, 115 Cal. 644, 647 [47 P. 689, 928].) ''

▮ As recently stated by our Supreme Court in *American Industrial Sales Corp.* v. *Airscope, Inc.*, 44 Cal.2d 393, 397 [282 P.2d 504, 49 A.L.R.2d 1344] : ''It has long been the rule that when the parties have not incorporated into an instrument all of the terms of their contract evidence is admissible to prove the existence of a separate oral agreement as to *any matter on which the document is silent and which is not inconsistent with its terms.*'' (Emphasis added.) This exception to the application of the parol evidence rule has been employed in a wide variety of situations to permit proof of a contemporaneous oral agreement where the writing involved was *silent* as to one element of the contract. (*American Industrial Sales Corp.* v. *Airscope, Inc., supra*, 44 Cal.2d 393, 397 [place of payment] ; *Sivers* v. *Sivers*, 97 Cal. 518, 521 [32 P. 571] [time of payment] ; *Bowman* v. *Santa Clara County*, 153 Cal.App.2d 707 [315 P.2d 67] [rate of performance] ; *Crawford* v. *France*, 219 Cal. 439, 443 [27 P.2d 645] [maximum costs] ; *Stockburger* v. *Dolan*, 14 Cal.2d 313, 317 [94 P.2d 33, 128 A.L.R. 83] [agreement to procure a zoning variance] ; *Lindsay* v. *Mack*, 5 Cal.App.2d 491, 496-497 [43 P.2d 350] [agreement to execute a quitclaim] ; *Buckner* v. *A. Leon & Co.*, 204 Cal. 225, 227 [267 P. 693] [agreement to furnish containers] ; see also *Gibson* v. *De La Salle Institute*, 66 Cal.App. 2d 609, 631-632 [152 P.2d 774] [agreement as to manner of shipment and storage].)

▮ In *Haggerty* v. *Warner*, 115 Cal.App.2d 468, 473 [252 P.2d 373], the writing sued upon was similar to the writing at bar in failing to make any reference to term or duration. Demurrers to causes of action based on the writing were sustained by the trial court on the ground that the contract was void for uncertainty. On appeal, the court reversed, remarking: ''Nor is the contract fatally uncertain and indefinite, as defendants urge, merely because it omits a time for its duration. *The effect of the omission from an agreement of the time of its duration is generally determined by a construction of the contract* (6 Cal.Jur., 218, § 143), *and may be implied from the nature of the contract or from the circum-*

*stances surrounding it.* (13 C.J. 271, § 60; 12 Am.Jur. 860, § 305; see *Noble* v. *Reid-Avery Co.*, 89 Cal.App. 75, 78 [264 P. 341]; *Mile* v. *California Growers Wineries, Inc.*, 45 Cal. App.2d 674, 679 [114 P.2d 651]; *Sutliff* v. *Seidenberg, Stiefel & Co.*, 132 Cal. 63, 64-66 [64 P. 131, 469]; *Gallagher* v. *Equitable Gas Light Co.*, 141 Cal. 699, 706-707 [75 P. 329].) The contract is subject to the construction, among others, that it was to continue as long as 'billings' were made by defendants.'' (Emphasis added.)

In *Zinn* v. *Ex-Cell-O Corp.*, 148 Cal.App.2d 56, 73 [306 P.2d 1017], the court dealt with a written contract relating to the distributorship of certain machinery in a specified territory. Although the contract was otherwise detailed and comprehensive, it contained no express provision as to its term or duration. The trial court received parol evidence bearing upon the intentions of the parties including evidence of circumstances attending the execution of the contract. On this evidence the trial court found that it was the intention of the parties that the contract was terminable only for good cause. In sustaining this finding the appellate court commented at pages 73-74: ''There is no express provision in the agency contract as to its term. Ex-Cell-O contends that it is well settled in this state that a contract of agency which specified no term or period of duration is terminable at the will of either party without liability. This may be true in some circumstances. (See *Speegle* v. *Board of Fire Underwriters* (1946), 29 Cal.2d 34, 39 [172 P.2d 867] and citations therein.) But that is not true where the intentions of the parties may be ascertained 'by reference to the circumstances under which it was made, and the matter to which it relates.' (Civ. Code, § 1647.) Also, the contract itself may have indications as to the intentions of the parties, even though not express. And 'where parol proof is admitted for the purpose of assisting the court to ascertain the intention of the parties and where conflicting inferences may be drawn, it is the constitutional function and duty of the trial court to determine the meaning of the parties and such finding is binding on the reviewing court.' (*Estate of Guasti* (1953), 117 Cal.App.2d 612, 617 [256 P.2d 629].)''

■ The foregoing California precedents, dealing as they do with contracts and factual situations closely similar to those here presented, point definitely to the conclusion that parol evidence should have been admitted for the purpose of ascertaining the intentions of the parties as to the term or

duration of the contract at bar. Manifestly the agreement of the parties, express or implied, as to the duration of their relationship must be ascertained and read into the writing before us, because in this respect the written memorial is silent. (See *J. F. Millett Co.* v. *Park & Tilford Distillers Corp.,* 123 F.Supp. 484, 491, 493.) And, "[o]nce something has to be read into a contract to make it clear, it can hardly be said to be susceptible of only one interpretation." (*Union Oil Co.* v. *Union Sugar Co.,* 31 Cal.2d 300, 306 [188 P.2d 470] ; *cf. Beneficial etc. Ins. Co.* v. *Kurt Hitke & Co.,* 46 Cal.2d 517, 524 [297 P.2d 428].)

The California precedents to which we have alluded are consistent with general authority. (See 3 Williston, Contracts, *supra,* p. 1819, § 633 et seq.; Rest., Contracts, §§ 228, 229, 239 and 240.) In the terminology of the Restatement, the writing at bar appears to constitute only a "partial integration" of the terms of the contract.

Respondent relies upon the rule stated in *Ruinello* v. *Murray,* 36 Cal.2d 687, at page 689 [227 P.2d 251] : "Ordinarily a contract for permanent employment, for life employment, for so long as the employee chooses, or for other terms indicating permanent employment, is interpreted as a contract for an indefinite period terminable at the will of either party, *unless it is based on some consideration other than the services to be rendered.*" (Emphasis added.) ˛This reliance is misplaced because, to use the language of *Ruinello* at page 690, plaintiff in the case at bar has alleged "other terms indicating a contrary intention." Moreover, plaintiff offered evidence tending to prove that the instant contract was based upon considerations "other than the services to be rendered."

It appears that plaintiff agreed not to handle any other line of vodka and that he did later decline another proffered line. Plaintiff offered to testify that the rate of his compensation was fixed at 50 cents a case (instead of $1.00) for the first 500 cases in order to provide compensation for Mr. Jetel, who was assigned to work with plaintiff in his efforts to produce "fruitful and larger turnovers of our brand in Southern California to our mutual benefit."

It is undisputed that the instant contract was modified by a subsequent executed oral agreement by which plaintiff's territory was extended to northern California. Plaintiff testified as follows concerning his negotiations with Mr. Morrell in reference to said modification: ". . . then, I inquired as to the arrangements and he said they would be the same as

they are down here, that as long as you did your job down here and up there both that you would go on as long as you did the job.'' The parties acted upon this modification. Plaintiff's testimony in reference to its terms could be construed either as an interpretation or as a modification of the original agreement with respect to the matter of its duration. Plaintiff's testimony in this respect was received without objection and ''. . . the admission of parol evidence to vary or add to a written instrument cannot be objected to for the first time in the appellate court.'' (*Pao Ch'en Lee* v. *Gregoriou,* 50 Cal.2d 502, 506 [326 P.2d 135].)

The contract which plaintiff alleged and offered to prove is not an ordinary contract of employment or agency in which the sole consideration on the part of the employee or agent consists of the rendition of services. Exclusive sales and distribution contracts such as that here involved generally express or imply obligations on both sides which are not present in the ordinary contract of employment. Williston devotes many pages of his text to the rules governing the duration and termination of this type of contract. (4 Williston, Contracts, p. 2847, § 1027A et seq. (rev. ed. 1936) and with reference to the situation ''[W]here the agreement contains no provision whatever for its termination'' he says: ''Quite properly this has been held an enforceable executory contract, binding upon each party for a reasonable time. It is the settled law of agency that if the agent or employee furnishes a consideration in addition to his mere services, he is deemed to have purchased the employment for at least a reasonable period where the duration of the employment is not otherwise defined.''

 Thus in the final analysis the issue as to the duration of the instant contract is one of fact to be resolved by a consideration of such available evidence as may be reasonably indicative of the intent of the parties, expressed or implied. (See *J. C. Millett Co.* v. *Park & Tilford Distillers Corp., supra,* 123 F.Supp. 484 [liquor distributor's contract indefinite as to duration found to be terminable only after a reasonable time and upon reasonable notice]; and *cf. Long Beach Drug Co.* v. *United Drug Co.,* 13 Cal.2d 158, 165 [88 P.2d 698, 89 P.2d 386] [sustaining validity of exclusive agency contract providing for continuance ''so long as plaintiff shall perform the terms of this agreement'']; *Great Western Distillery Products, Inc.* v. *John A. Wathen Distillery Co.,* 10 Cal.2d 442, 447 [74 P.2d 745] [sustaining validity of exclusive agency

contract providing for continuance "as long as the plaintiff purchases and continues to purchase . . ."] ; *Ravel* v. *Hubbard,* 112 Cal.App.2d 255, 259 [246 P.2d 88] [holding enforceable a contract providing for duration "so long as plaintiff was able to perform his portion of the contract"] ; and *Noble* v. *Reid-Avery Co.,* 89 Cal.App. 75 [264 P. 341] [holding enforceable a contract providing for duration "as long as they [plaintiffs] were able to give faithful service and a business management to the trade . . ."].)

Respondent relies strongly upon declarations in *Harrison* v. *McCormick,* 89 Cal. 327, 330 [26 P. 830, 23 Am.St. Rep. 469], and *Hotchkiss* v. *Nelson R. Thomas Agency,* 86 Cal.App.2d 154, 158 [214 P.2d 568], that ". . . parol evidence cannot be admitted to add another term to the agreement, although the writing contains nothing on the particular one to which the parol evidence is directed." The last quoted rule must be limited in its application to writings which appear as a matter of law to be complete integrations. Unless so limited it would be out of harmony with prevailing authority and in direct conflict with the holdings of the more recent California decisions discussed above, including, among others, *American Industrial Sales Corp.* v. *Airscope, Inc., supra,* 44 Cal.2d 393, 397.

Appellant's second major contention involves the construction and application of the provision of the contract dealing with agent's commissions: "We will compensate you with a brokerage commission, monthly, on all depletions of sales of our brand by all our distributors in Southern California, . . ."

The complaint prayed for recovery of $1,657 on account of commissions due and owing appellant at the time of his discharge on May 31, 1955, and there is testimony in the record that during the period of plaintiff's employment more than 1833½ cases of defendant's liquor products were sold to various Southern California distributors. However, not all of this merchandise was resold by the distributors. Plaintiff testified that at defendant's request some 1445½ cases of vodka were returned to defendant by the distributors for purpose of repackaging. Plaintiff also testified that 388 cases of vodka were retained by distributors despite defendant's request for their return for repackaging. It is agreed that the only payment tendered to plaintiff for his services in selling said 1833 cases was by two checks totaling $320.50, which plaintiff retained uncashed at the time of trial.

It is plaintiff's contention that the quoted contractual provision means that plaintiff earned his commission when goods were sold to local distributors, and that the reference to "depletion of sales" meant that the commission due plaintiff did not become payable until the dealer disposed of the merchandise by resale. From this premise plaintiff here contends: (a) that the 388 cases "inevitably" had been depleted by the time of trial, more than a year later; and (b) that the 1445½ cases were "depleted" by return to the manufacturer, or, alternatively, that defendant's solicitation of the return of the 1445½ cases constituted prevention of performance by the promisee, and was the equivalent of depletion.

The trial court construed the quoted portion of the contract to mean that commissions became due plaintiff only on *sales by the distributors during the period in which plaintiff was employed as defendant's agent—that is to say, prior to May 31, 1955.* The only evidence in the record dealing with this provision of the agreement is plaintiff's testimony as to his understanding of the meaning of the clause in question, which is directly contrary to the construction adopted by the trial court. This testimony is not reasonably susceptible of an inference which would support the judgment. Thus the trial court's construction of the clause of necessity rests on the language of the writing alone. ██ An appellate court is not bound to accept such a construction where it is not aided by extrinsic evidence. (*Cf. Union Oil Co.* v. *Union Sugar Co., supra,* 31 Cal.2d 300, 318; *Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825]; see 3 Witkin, Procedure, p. 2253, § 89.)

██ As the learned trial judge suggested in his memorandum of decision, plaintiff's right to commissions on merchandise sold to wholesalers prior to May 31, 1955, but not depleted from the wholesalers' stocks on that date may be dependent upon the ultimate adjudication as to the duration of the contract and as to defendant's right to terminate it. Moreover, we hold that defendant's promise to pay plaintiff ".on all depletions of sales" is sufficiently ambiguous and uncertain that its meaning should be reexamined in the light of such parol evidence as may be received in aid of its proper interpretation upon a retrial. (*Beneficial etc. Ins. Co.* v. *Kurt Hitke & Co., supra,* 46 Cal.2d 517, 524.)

The portions of the judgment appealed from are reversed.

Fox, P. J., and Ashburn, J., concurred.