[Civ. No. 25018.   Second Dist., Div. One.   May 12, 1961.]

NORMAN J. MANGINI, Appellant, v. WOLFSCHMIDT, LIMITED (a Corporation), Defendant; JOSEPH E. SEAGRAM & SONS, INC. (a Corporation), Respondent.

J. Albert Hutchinson for Appellant.

Lawler, Felix & Hall and John M. Hall for Respondent.

FOURT, J.—This is an appeal from the portions of a judgment which denied relief to plaintiff upon defendant's breaches and repudiation of future performance of an exclusive dis-

tributor's contract for the sale and distribution of defendant's products in plaintiff's exclusive territory within the State of California. Some time after the second trial, Joseph E. Seagram and Sons, Inc., a corporation, was substituted in the place of Wolfschmidt, Limited, a corporation, as the respondent and Joseph E. Seagram and Sons, Inc., a corporation, is now the respondent in this matter.

The second trial with which we are here concerned followed the reversal of certain portions of an earlier judgment. (See *Mangini* v. *Wolfschmidt, Ltd.*, 165 Cal.App.2d 192 [331 P.2d 728].)

The opinion in the first appeal sets forth at pages 194-196 the facts and pleadings in the matter as follows:

"Plaintiff is a licensed liquor manufacturer's agent and defendant is a liquor manufacturer and importer. In his complaint plaintiff alleged: that in July, 1954, he and the defendant '. . . entered into an oral contract by the terms of which defendant undertook and agreed to employ, and did employ, plaintiff as its exclusive selling agent . . .' within a described territory in the southern portion of California, and to pay plaintiff as compensation a specified commission; that by the terms of the contract it was further agreed '. . . that plaintiff should become and remain the sole and exclusive selling agent and should have and retain the exclusive right of sale of defendant's said products in said territory as long as plaintiff should continue to use his best efforts to promote and solicit the sale of defendant's products therein; that said oral contract was duly confirmed by defendant in its certain writing dated July 19, 1954 . . .' a copy of which was appended as an exhibit to the complaint and is set out in full in the footnote.[1]

---

[1] 'July 19, 1954

" 'Mr. Norman J. Mangini
1025 North Highland Avenue
Los Angeles 38, California

" 'Dear Norman:

" 'We have the pleasure to confirm herewith the following understanding between us:

" ' (1) We are appointing you as our representative for Southern California, effective immediately.

" ' (2) You will represent our Vodka and Kummel products. It is understood, of course, that you are not representing any other brand of Vodka.

" ' (3) We will compensate you with a brokerage commission, monthly, on all depletions of sales of our brand by all our distributors in Southern California, as follows:

"The complaint further alleged that plaintiff fully and faithfully performed the contract until May 31, 1955, but that on May 23, 1955, defendant wrongfully and without excuse or justification breached and repudiated the contract by writing him a letter reading as follows: 'This is to confirm our advice to you that we are discontinuing you as a broker for the sale of our products effective May 31st, 1955.'

"By the first cause of action of his complaint, plaintiff seeks recovery of the sum of $15,000 as damages for the 'breaches and repudiation of said contract' and the further sum of $1,675 for unpaid commissions on orders accepted by defendant prior to May 31, 1955. By his second cause of action, plaintiff seeks an accounting from defendant with respect to sales made by defendant on or after May 31, 1955, in 'plaintiff's exclusive territory.' The third cause of action may be disregarded since the portion of the judgment allowing plaintiff compensation for the special services therein alleged is not questioned on this appeal.

"It is to be specially noted that the letter of July 19, 1954, the writing by which, according to the complaint, the oral contract was 'confirmed'—is entirely silent as to the term or duration of plaintiff's employment. Defendant's answer ad-

(a) For the first 500 cases, monthly
       depletion...................$ .50 per case
(b) For the next 500 cases.................... 1.00 per case
(c) Over 1,000 cases, monthly................. .50 per case
" 'Commission will be paid to you on sales beginning July 1, 1954.
" 'In regard to the Kummel, we will pay you commission of $1.50 per case.
" 'You will undertake the postings of prices for our brand with the State Liquor authorities of California direct, or through one of our distributors. It is understood that any new changes in prices for postings will be taken up with us in ample time before such posting.
" 'We are appointing Mr. Charles E. Jetel of Los Angeles as a Special Promotion Man for our brand. Mr. Jetel will work under your supervision and coordination.
" 'It is acceptable to us that you and Mr. Jetel use for sampling purposes for the trade, at present, one and one-half cases of Vodka in pints or half pint size, or other sizes, but the total not to exceed 4.5 gallons. This will be drawn by you on our account from Alfred Hart Distilleries, Inc.
" 'I sincerely hope that our understanding will lead to fruitful and larger turnovers in our brand in Southern California to our mutual benefit.
" 'Wishing you good luck, I remain

" 'Yours very sincerely,
Wolfschmidt Limited
Samuel M. Morrell
Samuel M. Morrell
President' "

mitted '. . . a contract which was evidenced by the letter . . .' and the trial court found that the parties '. . . entered into a written contract, a true copy of which is annexed to the complaint. . . .' ''

Plaintiff sought to testify as to certain conversations with Morrell, Wolfschmidt's president, which preceded the writing. Wolfschmidt objected to the testimony upon the ground that it violated the parol evidence rule and the objection was sustained. Extensive offers of proof were made. The court stated at page 198:

''. . . the controlling question on this aspect of the case is whether it properly can be declared as a matter of law that the instant writing imports on its face to be such a complete expression of the whole agreement as to require exclusion of parol evidence offered to prove an additional contractual provision covering a matter as to which the writing is silent. (See 3 Williston, Contracts, p. 1821, § 633 (rev. ed. 1936).) . . .

'' 'It does not, therefore, render inadmissible proof of contemporaneous oral agreements collateral to, and not inconsistent with, a written contract where the latter is either incomplete or silent on the subject, and the circumstances justify an inference that it was not intended to constitute a final inclusive statement on the transaction. (*Crawford* v. *France*, 219 Cal. 439, 443-445 [27 P.2d 645]; *Weil* v. *California Bank*, 219 Cal. 538 [27 P.2d 904]; *Van Slyke* v. *Broadway Ins. Co.*, 115 Cal. 644, 647 [47 P. 689, 928].)' '' (*American Industrial Sales Corp.* v. *Airscope, Inc.*, 44 Cal.2d 393, 397 [282 P.2d 504, 49 A.L.R.2d 1344]; *Haggerty* v. *Warner*, 115 Cal.App.2d 468, 473 [252 P.2d 373]; *Zinn* v. *Ex-Cell-O Corp.*, 148 Cal.App.2d 56, 73 [306 P.2d 1017].)

Further, the court said at page 200: ''The foregoing California precedents, dealing as they do with contracts and factual situations closely similar to those here presented, point definitely to the conclusion that parol evidence should have been admitted for the purpose of ascertaining the intentions of the parties as to the term or duration of the contract at bar. Manifestly the agreement of the parties, express or implied, as to the duration of their relationship must be ascertained and read into the writing before us, because in this respect the written memorial is silent. [Citations.]''

It was pointed out further at page 201: ''Moreover, plaintiff offered evidence tending to prove that the instant contract

was based upon considerations 'other than the services to be rendered.'

"It appears that plaintiff agreed not to handle any other line of vodka and that he did later decline another proffered line. Plaintiff offered to testify that the rate of his compensation was fixed at 50 cents a case (instead of $1.00) for the first 500 cases in order to provide compensation for Mr. Jetel, who was assigned to work with plaintiff in his efforts to produce 'fruitful and larger turnovers of our brand in Southern California to our mutual benefit.'

"It is undisputed that the instant contract was modified by a subsequent executed oral agreement by which plaintiff's territory was extended to northern California. Plaintiff testified as follows concerning his negotiations with Mr. Morrell in reference to said modification: '. . . then, I inquired as to the arrangements and he said they would be the same as they are down here, that as long as you did your job down here and up there both that you would go on as long as you did the job.' The parties acted upon this modification. Plaintiff's testimony in reference to its terms could be construed either as an interpretation or as a modification of the original agreement with respect to the matter of its duration. Plaintiff's testimony in this respect was received without objection . . ."

It was ruled on pages 202-203: ". . . in the final analysis the issue as to the duration of the instant contract is one of fact to be resolved by a consideration of such available evidence as may be reasonably indicative of the intent of the parties, expressed or implied. (See *J. C. Millett Co.* v. *Park & Tilford Distillers Corp., supra,* 123 F.Supp. 484 [liquor distributor's contract indefinite as to duration found to be terminable only after a reasonable time and upon reasonable notice]; and *cf. Long Beach Drug Co.* v. *United Drug Co.,* 13 Cal.2d 158, 165 [88 P.2d 698, 89 P.2d 386] [sustaining validity of exclusive agency contract providing for continuance 'so long as plaintiff shall perform the terms of this agreement']; *Great Western Distillery Products, Inc.* v. *John A. Wathen Distillery Co.,* 10 Cal.2d 442, 447 [74 P.2d 745] [sustaining validity of exclusive agency contract providing for continuance 'as long as the plaintiff purchases and continues to purchase . . .']; *Ravel* v. *Hubbard,* 112 Cal.App.2d 255, 259 [246 P.2d 88] [holding enforceable a contract providing for duration 'so long as plaintiff was able to perform his portion of the contract']; and *Noble* v. *Reid-Avery Co.,*

89 Cal.App. 75 [264 P. 341] [holding enforceable a contract providing for duration 'as long as they [plaintiffs] were able to give faithful service and a business management to the trade. . . .'].)''

There was also a ruling upon certain depletion provisions of the contract and it was directed that ''. . . its meaning should be reexamined in the light of such parol evidence as may be received in aid of its proper interpretation upon a retrial.'' (*Mangini* v. *Wolfschmidt, Ltd.*, 165 Cal.App.2d 192 at p. 204 [331 P.2d 728].)

In other words the appellate court judgment directed the trial court to receive the rejected evidence and determine the duration of the contract by such evidence as would indicate the intent of the parties and to ascertain or determine the meaning of ''depletion sales.'' It was adjudged in effect that a valid contract had been established excepting for the two elements left undetermined by reason of the parol evidence objection.

The testimony and proof received in the second trial was substantially the same as that offered in the first trial. The defendant offered no evidence from any witness called by it.

The plaintiff testified unequivocally that it was expressly agreed that the duration of the contract was to be as long as he used his best efforts to accomplish the purposes of the promotion and sale of defendant's products.

It was in effect stipulated that: ''The agreement between plaintiff and defendant was amended and modified by an executed oral agreement during December 1954, which extended the territory within which plaintiff was to operate by adding thereto and including therein the counties of San Francisco, Marin, Alameda, San Mateo and Santa Clara.''

Repeatedly the plaintiff testified that he was to be engaged as long as he did the job or performed properly. It was stated in the conversations between himself and Morrell that it would take at least three years before the plaintiff would get back some of the promotional money and that a goal of sales of between 10,000 and 20,000 cases per month was set.

During the second trial, counsel for defendant repeatedly objected to the efforts of the plaintiff to establish the terms of duration of the contract upon the ground that it was an attempt to set up or establish an oral contract in violation of the statute of frauds. (Civ. Code, § 1624, subd. 1.) Most of such objections were overruled.

The judge, upon the completion of the trial, indicated that

no term of duration was mentioned, either in the agreement or in its confirmation and that no means of terminating the agreement were provided. Further, the trial judge indicated that the "agreement could not by any possibility be performed in less than three years because it would take that long before plaintiff could get his 'promotion money back' and begin to make a profit." The court settled upon three years as the reasonable time within which the parties were obligated to perform. Findings of fact were prepared which set forth, among other things, that talks had taken place between the plaintiff and Morrell and that a letter had been delivered to plaintiff, that the plaintiff was notified that as of May 31, 1955, his services were discontinued and plaintiff was not permitted to act for defendant thereafter, that it was orally agreed that defendant would continue plaintiff as its representative and plaintiff would perform the services agreed upon for a reasonable time and such reasonable time for the plaintiff's performance of plaintiff's services was three years and such services could not, by any possibility, be performed in less than three years. The important conclusion of law drawn from the findings was that the contract was invalid under section 1624, subdivision 1, of the Civil Code.

There was no finding with reference to the depletion questions.

Plaintiff, pursuant to section 634, Code of Civil Procedure, as amended in 1959, objected to the findings in that they were not sufficient to dispose of the issues and were in conflict with the law of the case. Plaintiff requested the judge to make findings in his favor.

A judgment was made and entered in favor of defendant and this appeal followed.

Section 1624, subdivision 1, of the Civil Code reads as follows: "The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent:

"1. An agreement that by its terms is not to be performed within a year from the making thereof; . . ."

Appellant now asserts that the trial court erred in finding the statute of frauds prevented enforcement of the contract; the defense of the statute of frauds was waived; the trial court erred in finding an implied "reasonable time" contract in the face of uncontradicted evidence of an express "as long as performed" contract; an oral contract agreement which is to

continue as long as the exclusive distributor performs his undertakings is not subject to the statute of frauds; the findings are contrary to the uncontradicted evidence; it was prejudicial error to exclude evidence of plaintiff's understanding of the written memorandum.

A reading of the entire record does demonstrate that on the duration issue the contract was terminable for cause only. Furthermore, the evidence is clear that the plaintiff accepted the representation of the defendant and undertook to conduct the sales meetings at all of the jobbers, supervised Jetel's activities, called on the accounts where he was supposed to and did undertake to do what was stated and discussed.

It was admitted that the contractual relationship was terminated without any claim at the time or otherwise of a failure of proper performance of plaintiff's obligations, but solely because defendant asserted that it had the right to terminate without cause and with no greater notice than was given.

The memorandum of the agreement has heretofore been set forth in full. It is appropriately stated in Witkin, Summary of California Law, volume I, Contracts, sections 88, 90, 91, pages 95-99:

Section 88: ''. . . The general rule, however, settled in California by a number of decisions, is that the statute relates to the *remedy* only and not to the substantial validity of the contract. The contract is not void, but merely *unenforceable*. It is effective for all purposes until, in an attempt to enforce it by action, its invalidity is urged as a defense. [Citations.]''

Section 90: ''The memorandum is not the contract, but merely evidence of its terms; the oral agreement is the contract. Hence an oral agreement may originally be subject to the bar of the statute, but may become enforceable if a note or memorandum is subsequently made. [Citations.] Thus, although an oral agreement to pay commissions to a real estate broker is within the statute [citation], subsequent written escrow instructions recognizing the obligation may make it enforceable. [Citations.]

''The memorandum may be informal, and may consist of one or more writings; e.g., two telegrams, or separate escrow instructions, each signed by one of the parties. [Citations.] And letters making reference to a written renewal contract not yet executed by the parties were nevertheless held sufficient. [Citation.]

"A memorandum may be sufficient though not intended as such; and it need not be delivered to the party who seeks to enforce the contract, but may consist of a communication to a third person. [Citations.]"

Section 91: ". . . But if the essential elements are stated, many common provisions or terms may be omitted. Thus, a memorandum may be sufficient evidence of a contract of sale, though it omits reference to such matters as quality of goods, place of storage or delivery, or means of transportation. [Citations.]"

In 23 Cal.Jur.2d page 353, section 98, it is stated: "It is provided by the statute of frauds that a contract which comes within the scope of its provisions is invalid unless it, or a note or memorandum thereof, is in writing and is subscribed either by the party to be charged or by his agent. The statute also provides that evidence of the agreement cannot be received in the absence of *a* such a writing, or secondary evidence of its contents. However, the writing need not be a formal contract drawn up with technical exactness, nor need it even be an instrument that was intended to create an obligation. Accordingly a letter, telegram, or other writing of a similarly informal nature is sufficient, regardless of whether it is addressed to an agent of the writer or to a third person." (See *Gibson* v. *De La Salle Institute,* 66 Cal.App.2d 609, 631 [152 P.2d 774]; *Hale* v. *Bohannon,* 38 Cal.2d 458 [241 P.2d 4]; *Crowley* v. *Modern Faucet Mfg. Co.,* 44 Cal.2d 321, 323 [282 P.2d 33]; *Brookes* v. *Adolph's Ltd.,* 170 Cal.App.2d 740, 742, 744-745 [339 P.2d 879].) ▮▮▮ There is no substantial conflict in the evidence in this case and as a consequence the conclusions of law of the trial court are not necessarily binding upon this court. (*Cosper* v. *Smith & Wesson Arms Co.,* 53 Cal.2d 77, 81 [346 P.2d 409]; *Emsco Pavement etc. Corp.* v. *City of Los Angeles,* 176 Cal.App.2d 760, 766 [1 Cal.Rptr. 814].)

▮▮▮ Appellant urges, and we think properly so, that it was determined in the first appeal "that the instant contract was modified by a subsequent executed oral agreement" and that plaintiff was told then "that you would go on as long as you did the job." (See *Pao Ch'en Lee* v. *Gregoriou,* 50 Cal.2d 502, 506 [326 P.2d 135]; *Nunez* v. *Morgan,* 77 Cal. 427, 433 [19 P. 753]; *Realty Corp. of America, Inc.* v. *Burton,* 162 Cal. App.2d 44, 55, 57 [327 P.2d 948]; *Union Oil Co. of Calif.* v. *Union Sugar Co.,* 31 Cal.2d 300, 306-307 [188 P.2d 470].)

The trial court in the second trial was in no position to find against what was tantamount to stipulated facts. (*Capital National Bank* v. *Smith,* 62 Cal.App.2d 328, 343-344 [144 P.2d 665].)

With reference to the claim of a waiver of the statute of frauds, it is true that the defendant did represent to the appellate court in the first appeal as follows:

"We would not talk about the statute of frauds at all believing as we do that no such issue is involved, except for plaintiff's incidental assertion that we waived the statute of frauds by not pleading it."

The plaintiff before the first trial stipulated that the defendant might present the defense of the statute of frauds against plaintiff's claim of an oral contract without specifically pleading the same through an amendment to the pleadings. In the pretrial order it is stated:

". . . In this connection, defendant will invoke the parol evidence rule and will contend that any such oral contract is invalid by virtue of Subdivision 1 of Section 1624 of the Civil Code. Plaintiff will contend, on the other hand, that said letter of July 19, 1954 constituted a written memorandum which takes said oral contract out of the Statute of Frauds."

It is further set forth: "Counsel for plaintiff stipulates that defendant may present the defense of the Statute of Frauds against plaintiff's claim of an oral contract, under the present pleadings without specifically pleading the same through amendment to the present pleadings or otherwise."

The stipulation was not renewed prior to or during the second trial. We believe, however, that there was no waiver by the defendant of the defense by reason of any neglect to renew the stipulation at the second trial. It might well be that there was a waiver for other reasons, but under the circumstances we find it unnecessary to determine the matter. (See *Ellis* v. *Klaff,* 96 Cal.App.2d 471, 475-476 [216 P.2d 15]; *Estate of Kearns,* 129 Cal.App.2d 832, 840 [278 P.2d 85].)

If the contract was modified by an executed oral agreement, and if such was stipulated to and if being an executed oral agreement takes the contract out of the statute of frauds, then it is difficult to see why there was not a waiver of the defense. (*Zinn* v. *Ex-Cell-O Corp., supra,* 148 Cal.App.2d 56, 74.)

█ Factually, the parties expressly agreed that the contract would continue "as long as you did your job—as long as I perform there would be no change in anything." Substan-

tively, the evidence established that plaintiff's contract could not be terminated by the defendant without cause. (*Zinn* v. *Ex-Cell-O Corp., supra.*) Procedurally, the plaintiff withdrew any reasonable time issue from the determination of the court and the defendant pleaded nothing with reference to duration other than that it was an "at will" agreement. The contention that it was an "at will" agreement was rejected in the first appeal and furthermore the defendant stipulated to facts which were irreconcilable with an implied reasonable time duration. An express "as long as performed" contract is not an implied "reasonable time" contract. (See Civ. Code, §§ 1619, 1620, 1621.)

Appellant takes the position that an oral contract which is to continue as long as the exclusive distributor performs his undertakings is not subject to the statute of frauds. (See *Brookes* v. *Adolph's Ltd., supra*, 170 Cal.App.2d 740, 742, 744-745.) In 28 American Law Reports 2d 878, 882, it is set forth in part as follows:

"Where one enters into a contract to perform personal services for an indefinite period of time, based upon a consideration other than the promise to perform, with the condition or qualification that the employment shall continue as long as he is able to perform or shall satisfactorily perform, the contract is not within the provision of the statute of frauds requiring contracts not to be performed within a year to be in writing, upon the ground that there is created a contingency by which performance may be terminated within a year.

"United States.—For federal cases involving state law, see state headings infra.

"California.—*Kelly-Springfield Tire Co.* v. *Bobo* (1925, CA9th Cal) 4 F2d 71, cert den 268 US 694, 69 L ed 1161, 45 S Ct 513."

The *Kelly-Springfield Tire Co.* v. *Bobo* case was cited with approval in *Long Beach Drug Co.* v. *United Drug Co.*, 13 Cal. 2d 158, 173 [88 P.2d 698, 89 P.2d 386].

There was independent consideration in the case before us.

See also *El Rio Oils etc., Ltd.* v. *Pacific Coast Asphalt Co.*, 95 Cal.App.2d 186, 194 [213 P.2d 1] where it is stated:

"Fifth: *That the contract between the parties not being in writing was not enforceable under the provisions of section 1624, subdivision 1, of the Civil Code, which provides that in the absence of some note or memorandum in writing subscribed*

*by the party or his agent, an agreement that by its terms is not to be performed within a year of the making thereof is invalid.*

"This proposition is also untenable. A contract is invalid under subdivision 1, section 1624 of the Civil Code only where by its *very terms* it cannot be performed within a year from the date it is made. (*McKeany* v. *Black,* 117 Cal. 587, 592 [49 P. 710]; *Hopper* v. *Lennen & Mitchell,* 146 F.2d 364 [161 A.L.R. 282]. See also *Hagan* v. *McNary,* 170 Cal. 141, 143 [148 P. 937, L.R.A. 1915E 562].)

"The fact that it is not probable or likely to be performed within a year from the date it is made does not make it invalid if by its terms it is possible that the contract may be performed within a year after it is made. (See *Hopper* v. *Lennen & Mitchell, supra.*)

"In the present case there was nothing in the terms of the contract that prevented it from being performed within a year from the date of the agreement. It was possible that during the year plaintiff's wells might have been pumped dry or for some other reason, due to earth movements or mechanical difficulties, it would be no longer feasible to produce from them."

In the case before us there could easily have been, within the year from the date of the making of the agreement, regulations adopted by the proper authorities which would have effectively put a stop to the doing of the business in the manner in which it was done. In fact prohibition could have come into effect which certainly would have stopped any further sales and the contract put to an end.

A reading of the findings discloses that there is no mention of the depletion issue though the evidence was seemingly uncontradicted that defendant was indebted to plaintiff in the sum of $1,445.75 thereon. The plaintiff was entitled to a finding on the particular issue and especially so after making the demand therefor.

On the duration and depletion issues, the plaintiff offered proof of his understanding of the memorandum; but, all efforts to introduce such evidence were rejected by the trial judge.

That part of the judgment appealed from is reversed.

Wood, P. J., and Lillie, J., concurred.