[Civ. No. 17818.   First Dist., Div. One.   Nov. 18, 1958.]

ZIMCO RESTAURANTS, INC. (a Corporation), Plaintiff; H AND E FOOD CORPORATION (a Corporation) et al., Appellants, v. BARTENDERS AND CULINARY WORKERS UNION, LOCAL 340, etc. (an Unincorporated Association), et al., Respondents.

Hession, Robb & Creedon, Dennis Hession and Paul F. Kelly for Appellants.

O'Keefe & O'Keefe for Respondents.

ST. CLAIR, J. pro tem.*—A group consisting of two individuals and three corporations, the owners and operators of six drive-in restaurants in San Mateo County entered into an agreement on June 26, 1952, with Local 340 of the Bartenders and Culinary Workers Union. In the preamble, the five owners were referred to simply by ''hereinafter called the 'Employer.' '' Each of the owners signed the agreement; there was no reference to them in any collective capacity on the signature page or anywhere in the agreement, other than as above.

The pertinent portion of that agreement (Exhibit A) reads: ''1. An election by secret ballot shall be conducted amongst the employees of 'EMPLOYER' in San Mateo County, . . . for the purpose of determining whether such employees desire to be represented for purposes of collective bargaining by the 'UNION' . . .

''2. The 'UNION' expressly agrees that, in the event that a majority of said employees vote that they do not wish to be represented for purposes of collective bargaining by the 'UNION' that *it will not make claim for representation for the purposes of collective bargaining agreement against 'EMPLOYER' for a period of three (3) months from and after the date the results of said election have been determined. Thereafter, if such claim be made, the question shall be resolved by an election by secret ballot in the same manner as is herein provided* . . .

''3. 'EMPLOYER' agrees that, in the event that a majority of said employees vote that they do wish to be represented for purposes of collective bargaining by the local, *that each and all of the parties constituting 'EMPLOYER' in this agreement, and their successors in interest, if any, will be bound by the agreement concerning wage scales and working conditions which is attached hereto and made a part of this Memorandum of Agreement by this reference . . .*'' (Emphasis added.)

The election was held pursuant to the contract, a majority of the employees voting against union representation.

Zimco Restaurants, Inc. (hereinafter called Zimco), purchased Smith's Drive-In Number 2, Inc., a signatory of the agreement, in March, 1954. There were meetings between some of the employers and union representatives at which there was discussion of the original agreement and its present effect, if any, on Zimco as a successor in interest to Smith's

---

*Assigned by Chairman of Judicial Council.

Drive-In Number 2, Inc. On conflicting evidence the trial court found that the agreement of June 26, 1952, was without a definite term, could be terminated at will, and was so terminated by notice of termination given by defendant union at the above mentioned 1954 meeting.

In 1956, all of the employees of Zimco had become members of respondent union. Union sought a collective bargaining agreement between itself and Zimco but was confronted by Zimco's claim for an election under the agreement of June 26, 1952.

After sanction by the Central Labor Council of San Mateo County, picket lines were established around Zimco's place of business but not around that of any other plaintiffs.

This action for injunctive relief followed. Preliminary relief was denied. After trial the court denied injunctive relief and this appeal followed.

The appeal was abandoned by Zimco, leaving as appellants herein H and E Food Corporation and San Bruno Food Corporation, signers of the agreement of June 26, 1952, and nonsigners Bay Region Catering Company, successor in interest to signer Harry A. Marquard, William H. Schoenhals, successor in interest to signer Elmer C. Smith, and San Mateo Drive-In Restaurant Association.

Many points were raised and exhaustively and ably briefed by both sides. Included by both sides were arguments on the point which we believe determines the case, to wit, that the agreement in question was for an indeterminate term and hence terminable at will by either party, on reasonable notice.

Examination of the quoted pertinent language of the agreement in question shows there was no fixed term; the agreement was either perpetual or for an indeterminable term. Before we enter into a discussion of the basic problem we should dispose of the contention that the contract is void *ab initio* for indefiniteness because of the lack of duration clause.

■ The general California rule appears to be that a contract is not fatally defective merely because it does not specify a time presently definite for its termination, 12 California Jurisprudence 2d 310. The rule is that if the contract is to remain in effect so long as one continues to perform or act in a certain manner (as in the instant case) the agreement is sufficiently certain to be vital. *Long Beach Drug Co.* v. *United Drug Co.*, 13 Cal.2d 158 [88 P.2d 698, 89 P.2d 386]; *Great Western etc. Products, Inc.* v. *J. A. Wathen D. Co.*, 10 Cal.2d 442 [74

P.2d 745] ; *Ravel* v. *Hubbard,* 112 Cal.App.2d 255 [246 P.2d 88].

We assume that the agreement in question was initially valid, under the above rule. The trial court having found, on conflicting evidence, that one party had given reasonable notice of termination, the real question is whether it required the mutual agreement of all parties thereto to terminate the same, or whether it was terminable at will by either party.

The key finding of the trial court reads: "The Agreement of June 26, 1952 identified as Exhibit 'A' is invalid, unenforceable, and of no force or effect in that it is in perpetuity and has no termination date, and if it was valid at any time, for any period of time, or for any purpose, it was an agreement without a definite term and could be terminated at will, and it was so terminated by notice of termination given by defendant UNION."

Both parties construe this finding to be referring to two separate types of agreement, to wit, one calling for perpetual performance and one providing for an indefinite term. For the purposes of this case, we accept that construction.

The premise appears to be that a contract calling for perpetual performance is one that requires the consent of both parties to terminate, although no cases were cited directly on this point. Assuming this premise, we turn to the agreement, and the circumstances surrounding the same, to determine whether or not it called for perpetual performance.

In *Nissen* v. *Stovall-Wilcoxson Co.,* 120 Cal.App.2d 316, cited by appellants, the court, at page 319 [261 P.2d 249], said: "It is not often that a promise will be properly interpreted as calling for perpetual performance. (Williston and Thompson on Contracts, § 38.) 'A construction conferring a right in perpetuity will be avoided unless compelled by the unequivocal language of the contract.' (17 C.J.S. "Contracts" § 398.) ▉ 'A contract will be construed to impose an obligation in perpetuity only "when the language of the agreement *compels* that construction." ' (*Massachusetts Bonding & Ins. Co.* v. *Simonds-Shields-Lonsdale G. Co.,* 226 Mo. App. 1071 [49 S.W.2d 645].) "

The last quotation is clearly the general and the California rule. In applying it to our instant problem, we must, of course, have in mind the fundamental rules of interpretation of contracts.

"A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable

of being carried into effect, if it can be done without violating the intention of the parties." (Civ. Code, § 1643.) "An interpretation which gives effect is preferred to one which makes void." (Civ. Code, § 3541.) "That is certain which can be made certain." (Civ. Code, § 3538.)

▉ "A contract must be construed, with reference to the subject matter, to the circumstances under which it was made, and to the evident intention of the parties as made apparent by all the language used—keeping in view the said subject matter and circumstances." (*Shoemaker* v. *Acker,* 116 Cal. 239, 243-244 [48 P. 62].)

A good statement of the applicable rule is contained in *Miller* v. *Miller,* 134 F.2d 583, 588: "It is a fundamental and well recognized rule that in construing contracts, courts must look not only to the specific language employed, but also to the subject matter contracted about, the relationship of the parties, the circumstances surrounding the transaction, or in other words, place themselves in the same position the parties occupied when the contract was entered into, and view the terms and intent of the agreement in the same light in which the parties did when the same was formulated and accepted. [Citations.]"

Webster defines "perpetual" to mean "continuing forever; everlasting; eternal." Can it be maintained that these parties had such results in mind?

It is difficult to conceive that parties dealing with the business of drive-in restaurants intended a contract to last forever. The history of technological developments (and a drive-in to serve the relatively new auto driver is such a development) in the organization of American industry has produced a modern miracle where change, not perpetual status, is the order of the day.

Both parties argued whether or not the agreement was against public policy, as the same is set forth in Labor Code, section 923, as the same has been construed in *Shafer* v. *Registered Pharmacists Union,* 16 Cal.2d 379 [106 P.2d 403] ; *In re Porterfield,* 28 Cal.2d 91 [168 P.2d 706, 167 A.L.R. 675] ; and *Garmon* v. *San Diego Bldg. Trades Council,* 49 Cal.2d 595 [320 P.2d 473].

We do not find it necessary to determine that question but the existence of the labor policy in question, as construed by the last named cases has a definite bearing on the question of whether or not the instant contract should be interpreted as calling for perpetual performance. In the excellent case of

*Green* v. *Obergfell*, 121 F.2d 46 [73 App.D.C. 298, 138 A.L.R. 258, at page 283], the court forcefully points out that the dynamics of business and trade unionism make an interpretation of perpetual performance enforced by a permanent injunction impossible in the light of labor policies similar to those as set forth in California Labor Code section 923.

We hold that the agreement of June 26, 1952, did not call for such perpetual performance as would require mutual consent to terminate the same.

As to contracts contemplating continuing performance for an indefinite time, the general rule is that such contracts are terminable at will by either party. Williston on Contracts, revised edition, volume I, page 104, section 38; Corbin on Contracts, volume I, page 298, section 96.

The rule is well established in California. *Southern Pac. Co.* v. *Spring Valley W. Co.*, 173 Cal. 291 [159 P. 865, L.R.A. 1917E 680] ; *Great Western etc. Products, Inc.* v. *J. A. Wathen D. Co., supra,* 10 Cal.2d 442; *Mile* v. *California Growers Wineries, Inc.*, 45 Cal.App.2d 674 [114 P.2d 651].

We hold that the agreement of June 26, 1956, was a continuing contract for an indefinite term and hence terminable at will by either party. The trial court found such a termination by respondents.

In the light of the above holding, we do not deem it necessary to comment on the many interesting points briefed by both sides.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.