[No. A086721. First Dist., Div. One. Apr. 21, 2000.]

ZEE MEDICAL DISTRIBUTOR ASSOCIATION, INC., Plaintiff and Appellant, v.
ZEE MEDICAL, INC., Defendant and Respondent.

**COUNSEL**

Neuberger, Quinn, Gielen, Rubin & Gibber, Allan P. Hillman, Nathan D. Adler; Bartko, Zankel, Tarrant & Miller, Ralph J. Sutton and Howard L. Pearlman for Plaintiff and Appellant.

Latham & Watkins, Charles S. Treat, Peter J. Wilson and James L. Day for Defendant and Respondent.

**OPINION**

**MARCHIANO, J.**—Zee Medical Distributor Association, Inc. (Association) appeals from a judgment of dismissal of its declaratory relief action against respondent Zee Medical, Inc. (Zee). The superior court entered the judgment after granting Zee's motion for summary adjudication on the key cause of action of the Association's complaint, ruling that the distribution agreements between Zee and its distributors had express terms of duration and were terminable only on the grounds for termination set forth in the agreements. The Association contends that the agreements did not have express terms of duration and were therefore terminable at will. We disagree and affirm because the parties themselves in their written contract agreed to the duration of their relationship, making it terminable for cause when specified conditions or events occur.

## I. FACTS

The parties have stipulated to the pertinent facts. Zee is a leading provider of occupational first aid and safety products and services, and has a national network of approximately 57 distributors. These distributors, all of whom belong to the Association, are the exclusive distributors of hundreds of Zee products and services in their respective assigned territories. Many of the distributors have invested substantial time, effort and money in developing their distributorships and their customer bases. The distributors own their customer lists, which are not available to Zee except for very limited, and apparently noncommercial, uses.

The relationship between Zee and each of its distributors is governed by a distribution agreement, which currently exists in three versions. Two versions of the agreement, apparently first used in the 1980's, are substantially the same. In seven pages of considerable detail, the agreements set forth the exclusivity of the distributorship, the duties of the distributor and Zee, and the goals of the distributorship expressed in terms of the amount of Zee products and services distributed in a given year. Paragraph IX of the two distribution agreements is entitled "TERMINATION" and provides as follows:[1]

"A.  Term. This Agreement shall continue until terminated as follows:

"1.  Either Party. Either party by giving notice to the other may terminate this Agreement effective upon the effective date of notice (a 'Termination

---

[1]Insignificant variations in precise wording between the two forms are not at issue, do not affect our analysis, and have not been noted.

Notice') in the event (1) the other makes an assignment for the benefit of its creditors or is the subject of a bankruptcy proceeding involving a reorganization which is not terminated within thirty (30) days following its commencement; or (2) of the default by the other of any obligation under this Agreement. A default shall (a) be deemed not to have taken place until thirty (30) days following notice of default from the other and if the default cannot reasonably be cured within such thirty (30) days but the cure has been commenced and completed within ninety (90) days it shall not be deemed a default and (b) not be asserted for failure to pay an invoice until that invoice is due.

"2. Zee. Zee, by giving a Termination Notice to Distributor, may terminate this Agreement effective upon the effective date of the notice in the event (1) the successor of a deceased or adjudicated incompetent individual who owns twenty percent (20%) or more of the Distributor, is unacceptable to Zee; a successor shall be deemed unacceptable if he has not had two years' business experience within the last ten (10) years, is not eighteen (18) years of age, has been convicted of a non-traffic crime, is incompetent or has a poor credit rating; a successor who already owns twenty percent (20%) of the Distributor and is active in the business shall automatically be deemed acceptable;

"(2) Distributor attempts to assign this Agreement or any right hereunder or an owner of an interest in Distributor attempts to assign that interest without the written consent of Zee, which consent Zee agrees not unreasonably to withhold; Zee shall consent to an assignment to a person that then owns twenty percent (20%) of Distributor and is active in the business;

"(3) Distributor does not achieve a New Goal."

The two distribution agreements define a "New Goal" as the goal set by the distributor and Zee for the upcoming year when the distributor has failed to meet its goal for the previous year. The agreements further provide that if Zee gives the distributor a termination notice, the distributor may sell its business—but Zee reserves the right of first refusal.

The third version of the distribution agreement is the most current, is even more detailed, and is 15 pages long. The agreement devotes over seven pages to recitations of the respective duties of Zee and the distributor, the description of the distributor's territory, and the distributor's goals. Paragraph 10 is entitled "TERM" and provides that "The term of this Agreement shall commence on the date first written above (the 'Effective Date'), and shall continue until it is terminated in accordance with the provisions of this

Agreement." Paragraph 12, entitled "Termination of Agreement," lists numerous detailed grounds for termination. Subdivision (a) of paragraph 12 provides for the termination of the agreement by either party:

"Either party has the right to terminate this Agreement on written notice to the other, effective on the date of delivery of such notice, if

"(i) the other shall take any action in respect of liquidation or winding up, or make an assignment for the benefit of creditors or be unable to pay its debts as they become due, or make any proposal or assignment under a bankruptcy legislation of any applicable jurisdiction, or if a bankruptcy petition is filed or presented by it in respect of its properties or assets, or a judgment or order shall be entered by any court of competent jurisdiction approving such petition or any petition by it seeking an arrangement or composition in respect of it or its debts or obligations, or if a custodian or receiver and manager or any other official of similar powers be appointed for it or a substantial portion of its undertaking, property or assets;

"(ii) a bankruptcy or other similar petition with respect to the bankruptcy, insolvency or other enforced liquidation of the other is presented or filed against it, provided, however, that in the case of any involuntary proceeding, the party against whom it is filed shall have sixty (60) days to obtain dismissal of the proceeding, or the equivalent of dismissal, before the other party may terminate this Agreement because of the filing of such proceeding;

"(iii) the other shall cease or threatens in writing to cease to carry on in the ordinary course of business or a substantial part thereof; or

"(iv) the other defaults in the performance of any material obligation hereunder, which default is not cured within thirty (30) days following notice of such default from the other or within such additional time, in no event to exceed ninety (90) days, as may reasonably be required, provided steps to rectify such default have been commenced within the first thirty (30) days following notice of default."

Subdivision (b) of paragraph 12 lists numerous grounds for termination of the agreement by Zee: the severe financial impairment of the distributor; its default in payment or performance; unauthorized consolidation, merger or other disposition of all or substantially all of the distributor's assets; a material change of the distributor's ownership without Zee's consent; unauthorized direct competition with Zee products; unauthorized assignment or attempted assignment of the agreement; conviction of a crime; diversion of a

customer or prospective customer to a Zee competitor; materially misrepresenting the distributor's performance to Zee; sale or transfer of all or substantially all of the distributor's assets without Zee's consent; and death or incapacitation of the distributor.[2]

The parties agree that these provisions of the three distribution agreements are not ambiguous.

For reasons not clear in the record, various Zee distributors began to contemplate the termination of their distribution agreements with Zee. A dispute arose over the terminability of the agreements, with the distributors contending the agreements are terminable at will and Zee contending they can only be terminated for cause.

The Association filed an action for declaratory relief against Zee, seeking a declaration that the agreements are terminable at any time with reasonable notice. The first cause of action of the complaint alleges the agreements are contracts with no stated duration and thus are terminable at will; the second cause of action alleges that 30 days constitutes reasonable notice. On the stipulated facts and the texts of the agreements, the parties filed cross-motions for summary adjudication on the first cause of action. While the Association contended the agreements are terminable at will, Zee contended the agreements have a stated term of duration because they recite that they "shall continue" until termination on the grounds set forth therein. The parties agreed not to submit for summary adjudication the issue of what constitutes reasonable notice, raised by the second cause of action.

The superior court granted Zee's motion and denied the Association's, ruling there was no triable issue of material fact on the first cause of action: "[U]nder California law and the clear language of the contracts, the Court determines and declares that the parties to these contracts may terminate them only in accordance with the contracts' express and exclusive specification of grounds for termination, and that the parties have agreed that the contracts 'shall continue' until such grounds arise." The parties stipulated that the ruling on the first cause of action made the second one moot, and that a final judgment could accordingly be entered. The court entered a final judgment dismissing the complaint, and declaring the distribution agreements were of a stated duration because they "shall continue" until termination in accordance with the express contractual grounds therefor.

---

[2]We only summarize these grounds for termination. They are subject to various detailed qualifications and exceptions which need not be set forth in this opinion.

## II. Discussion

■ The Association contends the distribution agreements lack an ascertainable event triggering the end of their terms of duration, and are thus contracts without express terms of duration and therefore are terminable at will. However, the admittedly unambiguous distribution agreements, construed in the light of established California law, are contracts with an express term of duration and terminable only for cause.

California cases have long recognized that a contract may, by its express terms, provide for a term of duration of indefinite length and without specific limitation, tied not to the calendar but to the conduct of the contracting parties. For instance, in *Great Western etc. v. J.A. Wathen D. Co.* (1937) 10 Cal.2d 442 [74 P.2d 745], our Supreme Court held that "[t]he failure to *specifically* limit the duration of the contract did not fatally affect it and did not give rise to a right to terminate the contract at will without a liability for damages." (*Id.* at pp. 446-447.) The court upheld as valid an express term of duration that the contract, apparently a post-Prohibition agreement for the distribution of distilled spirits, remain in effect " '*as long as the plaintiff purchases and continues to purchase* from the defendant all of its John A. Wathen Distillery Company warehouse receipts for whiskey . . . .' " (*Id.* at pp. 444, 447, italics added.) The court cited with approval *Noble v. Reid-Avery Co.* (1928) 89 Cal.App. 75, 77-78 [264 P. 341], upholding an express term of duration that a distribution contract continue "as long as" plaintiff-distributor was able to faithfully perform its contract obligations. (*Great Western, supra,* 10 Cal.2d at p. 447.)

Similarly, in *Long Beach Drug Co. v. United Drug Co.* (1939) 13 Cal.2d 158 [88 P.2d 698], the Supreme Court upheld an express but indefinite term of duration, tied to the performance of the parties, in a contract for the exclusive distribution of Rexall drug products: "While the agreement here does not state a definite term, it is not wholly silent with respect to its duration. It provides that the exclusive selling right of plaintiff is to endure so long as plaintiff 'shall perform the terms of this agreement'; that is, so long as plaintiff shall . . . 'uphold all of the products' of defendant to the full list retail prices, confining the sale thereof to its 'own retail store and to consumers only'. Provisions such as this for the duration of an agreement are sufficiently certain and have frequently been declared valid." (*Id.* at p. 165.)

Almost 20 years later, a Court of Appeal, citing these two Supreme Court cases, concluded, "The general California rule appears to be that a contract is not fatally defective merely because it does not specify a time presently

definite for its termination [citation]. The rule is that if the contract is to remain in effect so long as one continues to perform or act in a certain manner . . . the agreement is sufficiently certain to be vital. [Citations.]" (*Zimco Restaurants v. Bartenders Union* (1958) 165 Cal.App.2d 235, 237-238 [331 P.2d 789].)

Shortly thereafter, two more Courts of Appeal reached the same conclusion. In *Mangini v. Wolfschmidt, Ltd.* (1961) 192 Cal.App.2d 64 [13 Cal.Rptr. 503], the court observed that an express provision that the contract shall continue as long as the plaintiff performed was valid, and that the contract was not terminable at will but only for cause. (*Id.* at pp. 73-75.) In *Burgermeister Brewing Corp. v. Bowman* (1964) 227 Cal.App.2d 274 [38 Cal.Rptr. 597], the court observed that the contract between the parties "creat[ed] a beer distributorship for an expressly agreed-upon term, to wit: as long as Bowman [the distributor] should continue to use his best efforts to promote and solicit the sale of the brewery's products and 'took care of the territory'. . . ." (*Id.* at p. 277.) The *Burgermeister* court held this contract was not terminable at will. (*Ibid.*)

Against this backdrop *Consolidated Theatres, Inc. v. Theatrical Stage Employees Union* (1968) 69 Cal.2d 713 [73 Cal.Rptr. 213, 447 P.2d 325], which the parties agree is the preeminent authority here, entered the stage. In *Consolidated Theatres* the Supreme Court implicitly acknowledged the rule that a contract could expressly provide for continued performance,[3] then discussed the consequences of its failure to do so. "In construing contracts which call for continuing performance or forbearance but which contain no *express* term of duration, it is first necessary to determine whether the intention of the parties as to duration can be *implied* from the nature of the contract and the circumstances surrounding it. [Citations.] Thus, in some cases the court by referring to the nature of the contract and the totality of

---

[3]The *Consolidated Theatres* court, at 69 Cal.2d at page 727, cited with approval *Warner-Lambert Pharm. Co. v. John J. Reynolds, Inc.* (S.D.N.Y. 1959) 178 F.Supp. 655, affirmed (2d Cir. 1960) 280 F.2d 197, which involved a contract of indefinite term for the plaintiff's payment of royalties, based on the amount of Listerine it manufactured and sold, to the successor in interest of the mouthwash's inventor. The *Warner-Lambert* court upheld as plain and unambiguous the express contractual obligation to pay the royalties so long as the plaintiff continued to manufacture and sell the product: "The mere fact that an obligation under a contract may continue for a very long time is no reason in itself for . . . giving it a construction which would do violence to the expressed intent of the parties." (*Warner-Lambert, supra,* 178 F.Supp. at p. 661.) The court also noted there was "nothing unreasonable or irrational" in "[c]ontracts which provide no fixed date for the termination of the promisor's obligation but condition the obligation upon an event which would necessarily terminate the contract"—here, the plaintiff's ceasing the sale of the well-known breath freshener. (*Id.* at pp. 661, 663.)

circumstances is able to determine that the obligations of the contract were impliedly conditioned as to duration upon the occurrence or nonoccurrence of some event or situation." (*Consolidated Theatres, supra,* 69 Cal.2d at p. 725.) "California courts have not hesitated" to imply an ascertainable term of duration when reasonably possible. (*Id.* at p. 727.)

Results, of course, vary due to the circumstances and context of the contract. The 1968 *Consolidated Theatres* decision involved construction of a 1931 labor agreement, with no express term of duration, for the employment of stagehands for live stage performances in certain San Francisco movie theaters. From the nature of the contract and its surrounding circumstances, the court implied a term of duration defined by the lifespan of the practice of holding live performances. The court then observed that "the factual and social context obtaining at the time of the 1931 agreement was vastly different from that obtaining 30 years later." (*Consolidated Theatres, Inc. v. Theatrical Stage Employees Union, supra,* 69 Cal.2d at pp. 717, 729.) When executed, the contract assumed the showing of motion pictures would be interspersed with live performances requiring the services of stagehands. By 1968 there was "no such possibility" because the "theatres have for many years engaged exclusively in the showing of motion pictures and all facilities for the giving of live performances have been removed therefrom." (*Id.* at p. 730.) Like Othello, the stagehand found his "occupation's gone"[4]—thus, there could no longer be a contract for his services. The 1931 contract "was impliedly conditioned as to duration upon the continued possibility of live stage presentations at Consolidated's theatres, and . . . the disappearance of that possibility with the passage of time terminated all obligations under the contract." (*Consolidated Theatres, supra,* at p. 730, fn. omitted.)

Similarly, *Zimco Restaurants* involved a labor contract, apparently of no express duration, with employees of drive-in restaurants. The court declined to imply an intention of an indefinite duration; writing in 1958 with an astute prescience, the court noted "It is difficult to conceive that parties dealing with the business of drive-in restaurants intended a contract to last forever. The history of technological developments . . . in the organization of American industry has produced a modern miracle where change, not perpetual status, is the order of the day." (*Zimco Restaurants v. Bartenders Union, supra,* 165 Cal.App.2d at p. 239.)[5]

However, time and technological change are not always determinative. *Zinn v. Ex-Cell-O Corp.* (1957) 148 Cal.App.2d 56 [306 P.2d 1017], involved a detailed agreement for the distribution of milk machines. The court

[4]Shakespeare, Othello, act III, scene 3.
[5]Like stage shows at movie theaters, drive-in restaurants are all but gone from our cultural landscape.

implied from the nature of the agreement and its circumstances that the parties intended a permanent contract terminable only for cause—the distributor could continue acting as such "as long as it performed the terms of the contract and the objects and purposes of the agreement could be served." (*Id.* at p. 73.) Among other factors, "[t]he very nature and size of the undertaking which burdened [the distributor] once [it] executed the agency contract indicates that there was no intention that it should be terminable at will." (*Id.* at p. 74.) "Otherwise, plaintiffs could be denied the fruits of their labors even on the threshold of success. Equitable principles would prohibit such an oppressive result." (*Ibid.*)

█ *Consolidated Theatres* also discussed the consequences of a contract having *neither* an express nor an implied term of duration. When there is no express term, and the surrounding circumstances and the nature of the contract do not permit the construction of the contract to have an ascertainable term of duration, the contract is usually construed as terminable at will after a reasonable time of duration has elapsed. (*Consolidated Theatres, Inc. v. Theatrical Stage Employees Union, supra,* 69 Cal.2d at pp. 727-728.) Thus, *Consolidated Theatres* establishes a three-step analysis of contractual terms of duration. The court first seeks an express term. If one is absent, the court determines whether one can be implied from the nature and circumstances of the contract. If neither an express nor an implied term can be found, the court will generally construe the contract as terminable at will. (*Id.* at p. 727.)

█ The parties here differ only in which step they believe applies to the distribution agreements. Zee contends we may stop at the first step because the agreements have express terms of duration. The Association, with some suggestion that the agreements smack of purportedly disfavored perpetual contracts, argues that we must reach the third step and find the agreements terminable at the will of either party. Zee's position is correct.

The plain, unambiguous language that the contract "shall continue" until grounds arise for termination is a valid, express contractual term of duration similar to that upheld in *Great Western, Noble,* and *Long Beach Drug Co.* The contracting parties agreed in those cases that the contracts would continue as long as the parties performed. Since nonperformance constitutes breach, a contract that lasts so long as the parties perform their obligations necessarily continues until breach and the corresponding right to terminate the contract. We conclude that under controlling decisions of the California

Supreme Court, such express contractual terms for indefinite periods of time are valid in this state.[6]

Furthermore, the detailed intricacies of the termination provisions in the Zee distribution agreements clearly indicate the parties did not contemplate termination at will. For instance, time and again the distribution agreements *preclude* termination if a default under the agreement is cured in the detailed manner set forth by the agreement. Also, a distributor cannot suffer termination for one year of poor sales, but must be given another year and a chance to meet a "New Goal." These provisions are inconsistent with at-will termination. We must presume that the provisions of these negotiated, nonadhesion contracts were agreed upon by parties who clearly contemplated a long-term, mutually beneficial symbiotic relationship. These are not contracts of casual employment or the mundane commerce of fungible goods. Zee and its distributors rely on the constancy of their interrelationships; clearly those relationships would be easily eliminated if the distribution agreements were terminable at will, and clearly the parties did not so contemplate. Moreover, the terms of the agreements protect the Association from arbitrary termination by Zee where even reasonable notice may be an inadequate substitute for the sweat and capital investment of a distributor.

The Association insists, however, that the contracts are terminable at will, on the premise that an express term of duration cannot be grounded in provisions for breach or termination—i.e., that "a provision for breach does not transform a contract *without* a term into one *with* a term." The Association relies heavily on *Trient Part. I Ltd. v. Blockbuster Entertainment* (5th Cir. 1996) 83 F.3d 704, and *Jespersen v. Minnesota Min. & Mfg. Co.* (1998) 183 Ill.2d 290 [233 Ill.Dec. 306, 700 N.E.2d 1014], which held that contracts purporting to last "indefinitely" until terminated by breach, or the occurrence of contractual grounds for termination, were terminable at will. The short answer to the Association's contention is found in *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369

---

[6]Obvious exceptions to this rule are contracts for employment and for personal services. (See *Consolidated Theatres, Inc. v. Theatrical Stage Employees Union, supra,* 69 Cal.2d at p. 727, fn. 12; Lab. Code, § 2855.)

We note that the courts of New York have repeatedly approved contracts with express indefinite terms of duration, and have "had no difficulty in approving contracts made to last through the life of one of the parties." (*Ehrenworth v. George F. Stuhmer & Co.* (1920) 229 N.Y. 210 [128 N.E. 108, 110]; accord, *Ketcham v. Hall Syndicate, Inc.* (1962) 37 Misc.2d 693 [236 N.Y.S.2d 206, 212], affd. (1963) 19 A.D.2d 611 [242 N.Y.S.2d 182]; see *Payroll Exp. Corp. v. Aetna Cas. and Sur. Co.* (2d Cir. 1981) 659 F.2d 285, 291-292 [noting New York law approves distribution agreements providing for termination on the occurrence of listed events]; see also Faruki, *The Defense of Terminated Dealer Litigation: A Survey of Legal and Strategic Considerations* (1985) 46 Ohio St. L.J. 925, 928, fn. 8.)

P.2d 937]: Express indefinite contractual terms of duration for so long as the parties perform, i.e., until conditions for breach or termination arise, have been approved by our Supreme Court. We are not permitted to rule to the contrary. The long answer is that neither *Trient* nor *Jespersen* would lead us to a different result in this case.

*Trient* was decided under Texas law, which the *Trient* court claimed does not recognize express but indefinite contractual terms of duration. (*Trient Part. I Ltd. v. Blockbuster Entertainment, supra,* 83 F.3d at pp. 708-709, & fns. 10-15; see *Clear Lake City Water Auth. v. Clear Lake Util.* (Tex. 1977) 549 S.W.2d 385, 390-392.) This led the Fifth Circuit to conclude that a distribution contract that was to "continue indefinitely," until terminated by breach, was terminable at will. (*Trient, supra,* 83 F.3d at p. 709.) As we have noted, California law is to the contrary. The Fifth Circuit also ". . . 'does not favor perpetual contracts' and 'presumes that [any such] contract is terminable at will.' " (*Id.* at p. 708, quoting *Delta Services and Equipment v. Ryko Mfg. Co.* (5th Cir. 1990) 908 F.2d 7, 9 (fns. omitted).) Again, California law does not disfavor *express* contract terms of indefinite duration negotiated by the parties—especially given the California Supreme Court's favorable citation of *Lambert.* (See fn. 3, *ante.*)

Finally, it is not entirely clear that Texas law is as settled against indefinite terms of duration as the Fifth Circuit apparently believed. While *Clear Lake* held that contracts of indefinite terms are terminable at will, the Texas Supreme Court has nevertheless upheld an express indefinite term as "definite"—an agreement to provide water to a hospital "as long as" it was operated by the State of Texas. (*City of Big Spring v. Board of Control* (Tex. 1966) 404 S.W.2d 810, 811, 815-816.) Faced with an apparent conflict between *Big Spring* and *Clear Lake,* the Fifth Circuit took what it admitted was an " '*Erie* guess' " of Texas law and opined that *Big Spring* was limited to contracts for municipal services to governmental bodies. (*Trient Part. I Ltd. v. Blockbuster Entertainment, supra,* 83 F.3d at p. 710.) However, at least one Texas court has subsequently followed *Big Spring* with regard to private contracts. (See *Brittian v. General Tel. Co. of Southwest* (Tex.Civ.App. 1976) 533 S.W.2d 886, 891.)

Similarly, *Jespersen* was decided by the Illinois Supreme Court under Illinois law. (*Jespersen v. Minnesota Min. & Mfg. Co., supra,* 700 N.E.2d at p. 1015, fn. 2.) It also involved a distribution contract that " 'shall continue in force indefinitely' " unless terminated in the manner provided in the contract. Contrary to California law, Illinois law provides that such indefinite contracts are terminable at will. (*Id.* at p. 1016; *Joliet Bottling Co. v.*

*Joliet Citizens' Brewing Co.* (1912) 254 Ill. 215 [98 N.E. 263, 264-265] [contract to bottle beer to continue "so long as" the beverage was furnished by the brewing company was found to be indefinite and terminable at will].) Moreover, *Jespersen* is distinguishable on the text of the distribution agreements themselves; in *Jespersen* the provisions for breach were far less detailed than those in the present case, and also—unlike here—gave the distributor the right to terminate the agreement on 30 days' written notice. (*Jespersen, supra,* 700 N.E.2d at p. 1016.) *Jespersen* also reasoned that the termination provision was "permissive and equivocal" because it provided the parties "may"—not "shall"—terminate on the stated grounds. (*Ibid.*) We neither agree with this conclusion nor find it pertinent to the analysis.

Finally, the Illinois court felt the termination provision was insufficient to remove the contract from the rule that it was terminable at will because it merely stated the obvious fact that, like any contract, the distribution agreement was terminable by breach. Inexplicably, the court cited *Lichnovsky v. Ziebart Intern. Corp.* (1982) 414 Mich. 228 [324 N.W.2d 732, 737], which acknowledged the opposite: "The inclusion in this agreement of a specific right to terminate for cause . . . militates against a construction of the agreement that the licensor can terminate at will." Indeed, as we have noted above, the detailed provisions for termination for cause in the distribution agreements now before us clearly indicate that terminability at will was not contemplated by the contracting parties.

We decline to follow *Trient* and *Jespersen,* and reject the Association's claim that California law is "consistent" with their holdings. We also note that the Association, understandably enough, relies heavily on many decisions discussing California law dealing with contracts which, unlike the distribution agreements here, do *not* specify a term of duration for the contract. (See, e.g., *Alpha Distrib. Co. of Cal., Inc. v. Jack Daniel Distillery* (9th Cir. 1972) 454 F.2d 442 [decided under California law, and noting that such contracts are generally terminable at will].)[7]

We conclude the distribution agreements between Zee and the Association have valid, express terms of duration and are terminable only for cause, and not at will. Unlike the case of a contract in perpetuity with no specified termination provision, in this case the parties themselves agreed to a list of terminating events. As specified in the contracts, their relationship continues until it is terminated by one of the specific occurrences set forth in the

---

[7]We also reject the Association's argument that California Uniform Commercial Code section 2309 compels a conclusion the contracts are terminable at will. That statute involves contracts with no express term of duration.

agreement. We reiterate that these contracts are detailed and sophisticated and involve not only a contemplated long-term business relationship, but bristle with contractual safeguards against termination for default or poor performance. There are mutual inherent protections for both sides. There is no legal justification to look beyond what the parties agreed to. In addition to the express term of duration, the other express provisions of the contracts clearly indicate the parties did not intend the contracts to be terminable at will. To find an at-will termination in this case would rewrite the contracts between the parties and ignore the detailed enumeration of events which can terminate the contractual relationship and which also cover reasonably anticipated contingencies that may occur during the course of the relationship. We cannot interfere in a carefully contracted-for business relationship that the parties themselves explicitly established by finding implicit terms that are not present.

## III.   DISPOSITION

The judgment is affirmed.

Stein, Acting P. J., and Swager, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 12, 2000.