Filed 11/1/22  North Kern Water Storage District v. City of Bakersfield CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| NORTH KERN WATER STORAGE DISTRICT,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CITY OF BAKERSFIELD,<br><br>    Defendant and Appellant. | 2d Civ. No. B312766<br>(Super. Ct. No. 56-2011-00408712-CU-CO-VTA)<br>(Ventura County)<br><br>OPINION FOLLOWING REHEARING |

In 1976, appellant City of Bakersfield (City) and respondent North Kern Water Storage District (North Kern) signed a long-term agreement in which City agreed to sell its surplus water to North Kern.  City tried to terminate the agreement when the 35-year "Basic Term" ended in 2011.  North Kern sued to enforce its right to continue buying water under the agreement's indefinite "Extension Term."  The superior court found the agreement remained in effect despite City's intent to terminate it.  This court affirmed the judgment in 2016.

The parties returned to court in 2020 when City declined to sell water to North Kern.  North Kern moved to hold City in

contempt of the 2014 judgment. At the ensuing hearing the trial court found City was not in contempt but granted North Kern's companion motions seeking equitable and monetary relief. The court imposed a constructive trust on water stored in Lake Isabella and ordered City to compensate North Kern for costs incurred to pump its own groundwater when City refused to sell. City appealed.

We affirm, concluding the court properly imposed these remedies pursuant to its retained jurisdiction to enforce the agreement and 2014 judgment. (Code. Civ. Proc. § 187.)

FACTUAL AND PROCEDURAL BACKGROUND

*The Agreement*

City acquired annual rights to more than 125,000 acre-feet of Kern River water in the mid-1970s. This exceeded City's needs at the time. In 1976, North Kern agreed to purchase a portion of the surplus water pursuant to a long-term supply contract (the Agreement). The Agreement was divided into two terms. The 35-year Basic Term required City to supply, and North Kern to buy, 20,000 acre-feet of water annually between 1976 and 2011. The Extension Term began in 2012. It did not specify an ending date. City remained obligated to deliver water to North Kern but could "modify or terminate" the amount "subject to the City's shown need to and project to divert the 20,000 acre-feet per year to use the water on City-owned property or within its boundaries after having used all other water the City had available." The Agreement required City to provide storage figures, runoff forecasts, and anticipated delivery schedules to North Kern at specified times each year.

*North Kern I Litigation*

City sought to terminate the Agreement when the Basic Term expired in 2011. It argued the provision allowing it to "modify or terminate" North Kern's supply during the Extension

2

Term meant it could end the Agreement at will.  North Kern filed this action for declaratory and injunctive relief in response.  At the ensuing bench trial, the court found City could not unilaterally terminate the entire Agreement.  It could, however, modify or terminate the *amount* sold during the year upon a showing of its own need for the water.  This was memorialized in a statement of decision and incorporated into a judgment (the 2014 judgment).  The court enjoined City from taking any action inconsistent with the Agreement or the statement of decision, and retained jurisdiction "for the purpose of a party returning . . . to obtain relief from violations of [the] Judgment."  We affirmed the 2014 judgment.[1]

*North Kern II Litigation*

The parties returned to court in 2020.  North Kern accused City of violating the 2014 judgment by refusing to sell Extension Term water or to provide storage figures and delivery schedules.  City responded that it could barely meet its residents' needs because of dry weather conditions.  It argued North Kern's requests for information went beyond what the Agreement required City to provide.  North Kern sought relief by filing three motions:  (1) to enforce the 2014 judgment; (2) for monetary relief; and (3) for an order to show cause re: contempt.  The claims of each were consolidated for trial.

A central issue was City's decision to use 40,000 acre-feet of Kern River water in the first half of 2020 to recharge groundwater via the Kern River channel and the "2800 Acre"

---

[1] *North Kern Water Storage Dist. v. City of Bakersfield* (Apr. 21, 2016, B260065) [nonpub. opn.] (*North Kern I*).

3

groundwater recharge facility located west of City.[2]  City insisted this constituted a "need to divert" that took priority over deliveries to North Kern under the Agreement and the 2014 judgment.  The trial court found that recharging groundwater was not a "need to divert" that excused City's obligation to deliver water.  It also found City possessed the information sought by North Kern and should have provided it.  The court placed a portion of the water stored in Lake Isabella into constructive trust and awarded North Kern the costs of pumping groundwater to meet its needs ($624,000).[3]  It found City not guilty of contempt but granted the motion to enforce and the motion for monetary relief.  City appeals the latter two rulings.

DISCUSSION

*A. Enforcing the Judgment*

City contends the trial court exceeded its authority by awarding monetary relief to North Kern and imposing a constructive trust.  It insists contempt was the only procedure available to the court to address City's alleged violations of the Agreement.  We disagree.

---

[2] This included:  (1) 27,527 acre-feet City allowed to flow into the typically dry Kern River channel; and (2) 13,241 acre-feet diverted into 2800 Acres.

[3] The court calculated this figure by subtracting the cost of North Kern purchasing 20,000 acre-feet of water from City in 2020 under the Agreement ($2,180,000, or $109 per acre-foot) from the costs incurred to pump groundwater to meet its irrigation needs ($2,804,000).

4

Title 9 of the Code of Civil Procedure[4] identifies five categories of judgments.[5] City correctly places the 2014 judgment into the fifth category, i.e., those "requiring performance of an act . . . or requiring forbearance from performing an act." (§ 681.010, subd. (e).) This category of judgment is subject to section 717.010, which states: "A judgment not otherwise enforceable pursuant to this title may be enforced by personally serving a certified copy of the judgment on the person required to obey it *and invoking the power of the court to punish for contempt*." (Italics added.) We do not interpret this permissive language as restricting the court from exercising the enforcement powers conferred upon it by the parties.

This dispute concerns an ongoing contract of indefinite duration. (See *North Kern I*, *supra*, B260065, quoting *Zee Medical Distributor Assn., Inc. v. Zee Medical, Inc.* (2000) 80 Cal.App.4th 1, 7 ["'a contract may, by its express terms, provide for a term of duration of indefinite length and without specific limitation, tied not to the calendar but to the conduct of the contracting parties"].) The Agreement expressly allows for "a court of competent jurisdiction" to craft "a reasonable and equitable solution" when the parties cannot resolve disputes over

---

[4] Unlabeled statutory references are to the Code of Civil Procedure.

[5] The five types of judgment listed in section 681.010 are: (1) money judgments (section 695.010 et seq.); (2) judgments for possession of personal property (section 714.010 et seq.); (3) judgments for possession of real property (section 715.010 et seq.); (4) judgments for sale of real or personal property (section 716.010 et seq.); and (5) judgments "requiring performance of an act . . . or requiring forbearance from performing an act" (section 717.010 et seq.).

matters the Agreement left to future determination. (Agreement, § 12.2, subd. (e).) The 2014 judgment was the trial court's "reasonable and equitable solution" to the parties' initial dispute. The final paragraph confirms the court "retains jurisdiction for the purpose of a party returning to this Court to obtain relief from violations of this Judgment." Nowhere does the Agreement limit how the court can remedy future violations, or require one or both of the parties to file an original action each time they find themselves at odds during their annual Extension Term discussions. (See *Dawson v. East Side Union High School Dist.* (1994) 28 Cal.App.4th 998, 1045 ["In the exercise of its retained jurisdiction the trial court could (among other things) properly consider new evidence directly pertinent to the ongoing rights of the parties"].)

Awarding pumping costs compensated North Kern for performing the contract in City's stead. (See *Kassir v. Zahabi* (2008) 164 Cal.App.4th 1352, 1357 ["It is well established that the court has the power to award compensation incidental to a decree for specific performance, such as rents, when necessary 'to relate the performance back to the date set in the contract'"]; *Oceanside Cmty. Ass'n v. Oceanside Land Co.* (1983) 147 Cal.App.3d 166, 177 [court of equity "may create new remedies to deal with novel factual situations. . . . [It] is not strictly limited to the particular relief requested in the prayer of the complaint"].) We again conclude "the trial court properly adjudicated . . . the parties' rights and obligations under the Agreement's Extension Term" when it employed the dual remedies of constructive trust and monetary relief. (*North Kern I*, *supra*, B260065, citing § 1060.)

### B. Double Jeopardy Challenge

City contends double jeopardy barred the trial court from granting North Kern's motion to enforce the judgment and

motion for monetary relief after acquitting City of contempt. (U.S. Const., 5th Amend.; Cal. Const., art. I, § 15.) City also challenges these rulings as violating its due process rights. (*Ibid*.) We review these issues de novo as arising from undisputed facts. (See *People v. Davis* (2011) 202 Cal.App.4th 429, 438 ["when the facts are uncontradicted and different inferences cannot be drawn, the question of former jeopardy is one of law for the court to decide"].)

"Although a contempt may arise, as here, in the context of a civil action, a contempt proceeding is punitive and separate from the cause out of which it arises." (*Cedars-Sinai Imaging Medical Group v. Superior Court* (2000) 83 Cal.App.4th 1281, 1287, citing *Kroneberger v. Superior Court* (1961) 196 Cal.App.2d 206, 210.) The contempt proceeding was adjudicated concurrently with the two motions but remained a separate offense against the court, not against North Kern. (*Lloyd v. Superior Court* (1982) 133 Cal.App.3d 896, 899-900, citing *Raskin v. Superior Court* (1934) 138 Cal.App. 668, 669-670 ["A court has the inherent power to make sure judicial proceedings are conducted in a manner consistent with the orderly administration of justice and to punish those who show disrespect or disrupt the proceedings"].) Double jeopardy did not bar the court from deciding the factually related yet separate issues raised in the companion motions.

### C. Due Process Challenge

City next contends the trial court failed to give "timely and proper notice" of the procedures it used to adjudicate North Kern's request for monetary relief. The record belies this contention. North Kern's three motions first came to hearing on September 11, 2020. The court issued tentative rulings on all three. After argument, the court acknowledged the due process implications of North Kern's motions: "Again, I'll just come full circle and say that, unquestionably, North Kern is entitled to a

7

hearing on the OSC [re: contempt] issue. And so no matter what we do, we're going to be stuck doing a hearing. When I say 'stuck,' I don't mean that I don't want to do one. It just doesn't make a lot of sense to the Court to try to summarily resolve the other issues when they're inextricably connected with the contempt matter. *And I think that due process mandates a hearing for all three matters*." (Italics added.)

The evidentiary hearing took place over six days in October and November of 2020. The parties briefed evidentiary issues in December and stipulated to a closing argument schedule. The court accepted a final round of briefing, heard closing arguments, and issued its proposed statement of decision. The parties were given an opportunity to comment and object before the court adopted the statement of decision in May of 2021. They received ample notice of the relief requested and how the court intended to adjudicate the factual and legal issues presented. Each party introduced volumes of evidence and filed lengthy objections to its opponent's evidence. The court provided due process to both parties and, more broadly, crafted remedies well within its retained equitable jurisdiction. (See *Hutcherson v. Alexander* (1968) 264 Cal.App.2d 126, 134 ["a court of equity may, under certain circumstances, retain jurisdiction over the parties to the action in order to make certain that its orders and injunctions are obeyed"].)

### D. Double Recovery

City argues the trial court gave North Kern "an improper double recovery" by imposing a constructive trust and awarding monetary relief. It describes these remedies as mutually exclusive. (See, e.g., *St. James Armenian Church of Los Angeles v. Kurkjian* (1975) 47 Cal.App.3d 547, 553 ["where the constructive trustee has dissipated the fund or property that would constitute the res of the constructive trust that theory will

8

not do equity and it is proper in such a situation to award, instead, a judgment for money damages"].) Again we disagree. North Kern used its own groundwater in lieu of Extension Term water in 2020. The constructive trust replenishes this depleted resource to the extent feasible. The monetary relief compensates North Kern for costs it incurred in excess of what it would have paid City for the same amount of water. The trial court was careful to avoid a windfall by reducing the monetary award in the precise amount North Kern will owe City upon delivery. We agree with the trial court's reasoning and that its findings are supported by substantial evidence. (See *Harrison v. Adams* (1942) 20 Cal.2d 646, 648 ["it is well settled that a court of equity will compel a set-off when mutual demands are held under such circumstances that one of them should be applied against the other and only the balance recovered"].)

*E. Substantial Evidence for Imposing Constructive Trust*

"A constructive trust is an equitable remedy to compel the transfer of property by one who is not justly entitled to it to one who is." (*Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga* (2009) 175 Cal.App.4th 1306, 1332.) "A constructive trust may only be imposed when three conditions are met: the existence of a res, the plaintiff's right to the res, and the defendant's acquisition of the res by some wrongful act." (*Ibid*.) City contends North Kern failed to introduce evidence proving these three conditions were met.

City argues the trial court erred by imposing a constructive trust without substantial evidence that City possessed an identifiable or existing res at the time of trial. (See *Corely v. Hennessy* (1943) 58 Cal.App.2d 883, 885 ["a trust will not be created by judicial decree when there is no property upon which the trust can be impressed"].) As discussed above, the court paired the remedies of constructive trust and monetary relief to

9

compensate North Kern for water it *should have* received from City. The parties introduced affidavits, exhibits, and testimony about the amount of water City possessed and controlled throughout 2020. Whether City physically possessed or controlled the entirety of the res at the time of trial is not dispositive where, as here, the court found City had already dissipated the res by releasing it from Lake Isabella and allowing it to flow into the Kern River channel and 2800 Acres recharge facility. (See, e.g., *St. James Armenian Church of Los Angeles v. Kurkjian, supra,* 47 Cal.App.3d at p. 553 ["There is no difference between the situation where a person who would be subject to being declared a constructive trustee, has dissipated the res and the situation where a person who, without having the res in his possession, causes it to be diverted to a third person"].)

North Kern need not have introduced evidence of its right to water *currently* stored or banked by City. Trial was held in October and November of 2020; the parties submitted their closing briefs in Spring of 2021. North Kern had long since been forced to find alternative water sources. The court properly identified Lake Isabella as the situs of the constructive trust because the lake once held the property dissipated by City in violation of the Agreement, akin to a bank account from which City commingled and withdrew funds. (See *Mitchell v. Dunn* (1930) 211 Cal. 129, 133 ["where a trustee commingles trust and personal funds, and then withdraws part of the fund, it will be presumed that the withdrawals were from the personal funds of the trustee, and that the balance constitutes the trust funds"].)

We are not persuaded by City's argument that North Kern failed to prove the third condition of constructive trust, i.e., that City wrongfully acquired its water supply. North Kern did not contend, and need not have proven, City obtained the water held in Lake Isabella by illegal or wrongful means. It was enough

10

City wrongfully *detained* property it once possessed legally. (See Civ. Code, 2223 ["One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner"]; *Taylor v. Polackwich* (1983) 145 Cal.App.3d 1014, 1022 ["a constructive trust may be imposed in practically any case where there is a wrongful acquisition or detention of property to which another is entitled"].) The dispute centered on how City handled its supply or, more specifically, its decision to turn surface water (in Lake Isabella) into groundwater (via 2800 Acres and the Kern River channel) instead of selling it to North Kern. Both sides introduced evidence in support of their positions; the trial court found North Kern's more persuasive. Substantial evidence supported the ruling.

DISPOSITION

Judgment is affirmed. North Kern shall recover its costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.*

We concur:

GILBERT, P.J.        YEGAN, J.

---

\* Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Kevin G. DeNoce, Judge
Superior Court County of Ventura
_____

Duane Morris, Colin L. Pearce and Jolie-Anne S. Ansley; Bakersfield City Attorney's Office and Virginia A. Gennaro, for Defendant and Appellant.

Young Wooldridge, Scott K. Kuney and Brett A. Stroud; Price, Postal & Parma and Timothy E. Metzinger, for Plaintiff and Respondent.