Filed 5/24/24    Opinion following order vacating prior opinion

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PAMELA COOK, | B330640 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 22STCV21534) |
| v. | |
| UNIVERSITY OF SOUTHERN CALIFORNIA et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Anne Richardson, Judge.  Affirmed.

CDF Labor Law, Wanja S. Guy and John R. Giovannone for Defendants and Appellants.

Cummings & Franck, Scott O. Cummings and Lee Franck for Plaintiff and Respondent.

## INTRODUCTION

An arbitration agreement of infinite duration requires an employee to arbitrate all claims against the employer, its agents, affiliates, and employees irrespective of whether they arise from the employment relationship. We hold such an arbitration agreement is unconscionable. Plaintiff filed a lawsuit against her employer and two coworkers alleging discrimination and harassment in the course of her employment. The defendants collectively moved to compel arbitration under an arbitration agreement signed by the plaintiff as a condition of employment. The trial court denied the motion to compel arbitration, finding the arbitration agreement was permeated by unconscionability, which could not be severed from the agreement. The defendants appeal the trial court's denial of their motion to compel arbitration. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Cook's Complaint*

On July 1, 2022, plaintiff and respondent Pamela Cook (Cook) filed a complaint against defendants and appellants the University of Southern California (USC), Fatima Manuao, and "Lorena (Last Name Unknown)" (collectively USC). Cook's complaint asserts 18 causes of action, all of which arise from her employment with USC. Cook alleges she was subjected to disparate treatment by USC based on her race. Cook also alleges USC failed to accommodate a variety of health-related time-off requests. She also alleges she was subjected to retaliatory harassment when she reported the discrimination and failure to accommodate her disabilities. She asserts she was "actually and/or constructively" terminated from her employment on August 24, 2021.

B.    *Motion to Compel Arbitration*

On October 24, 2022, USC filed a motion to compel all of Cook's claims to arbitration.  USC claimed Cook's employment "offer was contingent upon Plaintiff executing an employment agreement and arbitration agreement."

The arbitration agreement attached to the motion states in pertinent part: "Therefore, the University and the faculty or staff member named below ('Employee') agree to the resolution by arbitration of all claims, whether or not arising out of Employee's University employment, remuneration or termination, that Employee may have against the University or any of its related entities, including but not limited to faculty practice plans, or its or their officers, trustees, administrators, employees or agents, in their capacity as such or otherwise; and all claims that the University may have against Employee. . . .  The claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); claims for personal, physical, or emotional injury, or for any tort; claims for discrimination or harassment (including, but not limited to, race, sex, religion, national origin, age, marital status, sexual orientation, gender identity or expression, military and veteran status, or medical condition or disability); claims for 'whistleblowing' or retaliation; and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance."  The arbitration agreement also provides that it "supersedes any prior or contemporaneous agreement on the subject, shall survive the termination of Employee's employment, and may only be revoked or modified in a written document that expressly refers to the 'Agreement to Arbitrate Claims' and is signed by

3

the President of the University." USC stated Cook electronically signed this stand-alone arbitration agreement on or about May 7, 2021.

USC argued the claims in Cook's complaint all fell within the scope of the agreement. In asserting the agreement was not substantively unconscionable, USC claimed the agreement was not "one-sided in favor of the employer without sufficient justification." It also argued the agreement was mutual and afforded Cook the same rights and remedies that would be available to her in court proceedings.

In opposition, Cook argued USC did not establish she electronically signed the arbitration agreement. Cook also asserted that many of her claims were not subject to arbitration. Cook argued the arbitration agreement was procedurally unconscionable because it was a contract of adhesion that was made a condition of her employment. She also alleged the agreement was substantively unconscionable because it contained an infinite scope that covered her claims regardless of whether they related to her employment relationship with USC and survived the termination of that relationship for an indefinite period.

In its reply, USC submitted a supplemental declaration to support the claim that Cook electronically signed the agreement. It also argued none of Cook's claims were exempt from arbitration. USC contested Cook's claims of procedural and substantive unconscionability. However, USC did not address the infinite duration of the agreement.

On April 18, 2023, the trial court issued a comprehensive and well-reasoned order denying the motion to compel arbitration. The court determined USC had demonstrated the existence of an agreement to arbitrate that was electronically signed by Cook on May 7, 2021. The trial court rejected Cook's claims that certain of her causes of action were not

4

subject to arbitration as a matter of law and found "the arbitration agreement encompasses all eighteen claims advanced by Plaintiff Cook."

Turning to Cook's argument of unconscionability, the trial court determined the arbitration agreement "exhibits some procedural unconscionability" due to the "adhesive and non-negotiable nature of the arbitration agreement as a condition of employment with USC." The court also found the agreement was substantively unconscionable because it was infinite in scope and duration. The agreement specifically provides that it would survive the termination of Cook's employment and could only be revoked in a writing signed by Cook and the president of USC. It also applied to "all" of Cook's claims regardless of whether they arose from her employment. The trial court noted that "for the rest of her life, if Plaintiff were to suffer an injury related to USC or its related entities, Plaintiff could be ordered to arbitrate such claims." The court found this would include claims completely unrelated to her employment, stating that if Cook was "the victim of a botched surgery in a USC hospital in 15 years, her claims could be subject to the arbitration agreement."

The trial court also held the agreement lacked mutuality because it required Cook to arbitrate her claims against USC and all of USC's "related entities" including officers, trustees, administrators, employees, and agents. However, in contrast, the agreement only required USC to arbitrate its claims against Cook but did not require USC's "related entities" to arbitrate their claims against Cook. The trial court concluded "This lack of mutuality renders the arbitration agreement substantively unconscionable because it provides the employer more rights and greater remedies than would otherwise be available and concomitantly deprives Plaintiff of significant rights and remedies that she would normally enjoy, for example, in a judicial

5

forum. . . . [¶] Overall, the Court thus finds that the wide scope of the arbitration agreement (all claims between the parties), its duration (surviving termination of employment and applicable unless rescinded by both parties), and its lack of mutuality (claims that can be petitioned for arbitration) support a finding that substantial substantive unconscionability exists in the terms of the arbitration agreement."

The trial court determined the unconscionable terms could not be severed from the agreement. The court found the agreement was "permeated by unconscionability and cannot, in the interests of justice, be severed." The court noted that to cure the unconscionability by making the agreement mutual to both parties, it would need to rewrite the scope of the agreement, redefine the duration, and enlarge the scope of claims that Cook could compel to arbitration. The court found these revisions "would substantially alter the nature and character of the agreement entered by the parties." The trial court also held that severing the unconscionable provisions would favor USC by giving it "the possible windfall of drafting an unconscionable contract but nevertheless still receiving the benefit of arbitration through severance."

The court denied the motion to compel, finding Cook successfully raised the defense of unconscionability.

C.   *Appeal*

USC filed a timely appeal of the court's denial of its motion to compel arbitration. On appeal, it argues the trial court erred in finding the arbitration agreement unconscionable and unenforceable.

**DISCUSSION**

A.   *Legal Standards*

6

A written agreement to submit a controversy to arbitration is valid and enforceable, absent a reason under state law, such as unconscionability, that would render any contract revocable. (Code Civ. Proc., § 1281; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*); *Sandoval-Ryan v. Oleander Holdings LLC* (2020) 58 Cal.App.5th 217, 222.) "The party seeking to compel arbitration bears the burden of proving the existence of an arbitration agreement." (*Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 890.) "[T]he party opposing arbitration bears the burden of proving by a preponderance of the evidence any defense, such as unconscionability. [Citations.]" (*Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1468 (*Peng*).)

Unconscionable terms in an arbitration agreement cannot be enforced. (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 118.) "'[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on "'oppression'" or "'surprise'" due to unequal bargaining power, the latter on "'overly harsh'" or "'one-sided'" results. [Citation.] 'The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' [Citations.] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra*, 24 Cal.4th at p. 114, italics omitted.)

7

"The procedural element of an unconscionable contract generally takes the form of a contract of adhesion." (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071 (*Little*).) An adhesive contract is defined as "'a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' [Citation.]" (*Armendariz, supra,* 24 Cal.4th at p. 113.) Substantive unconscionability "typically is found in the employment context when the arbitration agreement is 'one-sided' in favor of the employer without sufficient justification." (*Peng, supra*, 219 Cal.App.4th at pp. 1472–1473.) However, "[s]ome courts have imposed a higher standard: the terms must be "'so one-sided as to *shock the conscience*." [Citation.]' [Citation.] Where a party with superior bargaining power has imposed contractual terms on another, courts must carefully assess claims that one or more of these provisions are one-sided and unreasonable." (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 88.)

If a court finds a clause within a contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or instead sever the unconscionable clause and enforce the remainder of the contract. (Civ. Code, § 1670.5, subd. (a); *Armendariz, supra*, 24 Cal.4th at p. 122; *Davis v. Kozak* (2020) 53 Cal.App.5th 897, 905.) Where, as here, no disputed factual issue bears upon our unconscionability analysis, we review unconscionability de novo. (*Pinela v. Neiman Marcus Group, Inc.* (2015) 238 Cal.App.4th 227, 241 [reviewing de novo "the legal question of unconscionability here, in the first instance" when there were "no facts in dispute"].)

B.   *The Trial Court Did Not Err in Finding the Arbitration Agreement is Unconscionable*

1.   *Procedural Unconscionability*

The trial court found a low degree of procedural unconscionability due to the adhesive nature of the agreement.  Neither side contests this finding on appeal.  Therefore, only a high degree of substantive unconscionability would render the agreement unconscionable.  (See, e.g., *Ramirez v. Charter Communications, Inc.* (2022) 75 Cal.App.5th 365, 373, review granted June 1, 2022, S273802 (*Ramirez*) ["When, as here, the degree of procedural unconscionability is low, the agreement must be enforced unless the degree of substantive unconscionability is high"].)

2.   *Substantive Unconscionability*

The trial court found the arbitration agreement was substantively unconscionable for three reasons: (1) the broad scope of the agreement, (2) the infinite duration, and (3) the lack of mutuality in the claims that were covered by the agreement.  We discuss each basis in turn.

a.   *Scope*

By its express terms, the agreement requires the arbitration of "all claims, whether or not arising out of Employee's University employment, remuneration or termination, that Employee may have against the University or any of its related entities, including but not limited to faculty practice plans, or its or their officers, trustees, administrators, employees or agents, in their capacity as such or otherwise; and all claims that the University may have against Employee."  The plain language of the

9

agreement requires Cook to arbitrate claims that are unrelated to her employment with USC.

USC argues that regardless of the agreement's express language to the contrary, the arbitration agreement must be construed to apply only to disputes arising from Cook's employment at USC because absurd results would otherwise ensue.[1]  In other words, USC appears to concede the scope of the agreement—as written—is unconscionably broad and must be construed to mean other than what it plainly states to avoid unreasonable results. Courts have rejected similar arguments.  (See, e.g., *Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1147 [rejecting the argument that a unilateral fee-shifting provision did not render an arbitration agreement substantively unconscionable because the provision violated the Labor Code and could not actually be enforced against the employee as written]; *Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 88–89 [rejecting the argument that a unilateral fee-shifting provision in an arbitration agreement was conscionable because Civ. Code, § 1717 could provide the employee relief from the provision's one-sidedness]; *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 116–117 [holding an arbitration provision requiring the parties to split the arbitration costs and to

---

[1]     We note USC took the opposite position in its briefing below.  In the motion to compel, USC stated, "The Agreement expressly applies to all claims, whether or not they arise out of Plaintiff's employment."

post fees in advance was unconscionable even though the employer stated it was willing to modify the agreement and bear the cost of arbitration].)[2]

USC relies on *Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231 (*Tiri*), *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462 (*Roman*), *Little*, *supra*, 29 Cal.4th 1064, and *Western Bagel Co., Inc. v. Superior Court* (2021) 66 Cal.App.5th 649 (*Western Bagel*) as enforcing arbitration agreements which are analogous to the agreement at issue here. We find these cases are inapplicable.

In *Tiri*, an employee signed an arbitration agreement with her employer, Lucky Chances, Inc. (*Tiri, supra*, 226 Cal.App.4th at p. 236.) The full terms of the agreement were not set forth in the court's opinion, but the court summarized the agreement as relating "solely to resolving claims between Tiri and Lucky Chances." (*Id.* at p. 237.) The agreement also contained "an explicit provision that delegates to the arbitrator issues regarding the agreement's enforceability." (*Ibid.*) The only question on appeal was "whether the trial court properly denied Lucky Chances's petition to compel arbitration in light of the delegation clause, which gives the arbitrator the authority to decide whether the arbitration agreement is enforceable." (*Id.* at p. 238.) The court noted that to avoid enforcement of the

---

[2]     USC suggests that the broad scope of the arbitration agreement is of no consequence because the claims raised by Cook in this action all relate to her employment. We disagree. Unconscionability is judged "at the time [the contract is] made." (Civ. Code, § 1670.5, subd. (a); see also *Ramirez, supra*, 75 Cal.App.5th at p. 384 ["the unconscionability analysis evaluates whether the agreement is bilateral 'at the time it was made' rather than as applied to a specific plaintiff"]; *Ingle v. Circuit City Stores, Inc.* (9th Cir. 2003) 328 F.3d 1165, 1175 [concluding that a prohibition against class-wide arbitration of employment disputes in an arbitration agreement was "patently one-sided," and substantively unconscionable, despite the fact that the employee had not brought a class action lawsuit].)

11

delegation clause, the employee had to show the delegation clause itself was unconscionable. (*Id*. at p. 244 ["any claim of unconscionability must be *specific to the delegation clause*"].) The court examined the delegation clause in question and determined it could "find nothing in the delegation clause upon which to conclude that it lacks mutuality or is otherwise unreasonably favorable to Lucky Chances." (*Id*. at p. 247.) The court did not address the employee's other claims of unconscionability because those "arguments are not specific to the delegation clause." (*Id*. at pp. 247–248.) Instead, the arbitrator would address all other unconscionability arguments pursuant to the delegation clause. (*Id*. at p. 250.)

USC claims the *Tiri* court rejected the "argument [that an] arbitration agreement requiring arbitration for 'any and all differences and/or legal disputes' lacked mutuality." We disagree with this characterization of *Tiri*. *Tiri* was concerned exclusively with the enforceability of a delegation clause. It did not address whether the scope of the arbitration agreement was otherwise unconscionable. Cases do not stand for propositions not considered therein. (*People v. Harris* (1989) 47 Cal.3d 1047, 1071 ["It is axiomatic, of course, that a decision does not stand for a proposition not considered by the court"].)

USC's reliance on *Roman* fares no better. In *Roman*, unlike here, the arbitration clause in question was expressly limited to claims arising from the employee's job application and subsequent employment. "The arbitration provision, contained in a separate paragraph initialed by Roman, provided, 'I hereby agree to submit to binding arbitration all disputes and claims *arising out of the submission of this application*. I further agree, in the event that I am hired by the company, that all disputes that cannot be resolved by informal internal resolution which might *arise out of my employment with the*

12

*company, whether during or after that employment*, will be submitted to binding arbitration.'" (*Roman*, *supra*, 172 Cal.App.4th at p. 1467, italics added.)

The same is true of the arbitration agreement at issue in *Little*. The arbitration agreement in that case stated, in pertinent part, "I agree that any claim, dispute, or controversy (including, but not limited to, any and all claims of discrimination and harassment) which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and the Company (or its owners, directors, and officers, and parties affiliated with its employee benefit and health plans) *arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with, the Company*, whether based on tort, contract, statutory, or equitable law, or otherwise, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act." (*Little*, *supra*, 29 Cal.4th at pp. 1069–1070, italics added.)

The *Roman* and *Little* courts each concerned the enforceability of an employment arbitration agreement which was expressly limited to claims arising from or related to employment. They did not address the conscionability of an arbitration agreement in which an employee was bound to arbitrate any and all claims, whether or not they arose from the employee/employer relationship. For this reason, we find these cases unpersuasive in establishing the conscionability of Cook's arbitration agreement.

As for *Western Bagel*, we are unable to determine the extent to which the agreement at issue in that case is similar to Cook's. The court in *Western Bagel* did not provide the relevant text of the arbitration agreement in full.

13

Instead, it summarized it as follows: "Paragraph 1 of the Spanish MAAC provides in pertinent part: 'To the maximum extent permitted by law, [Western Bagel] and I mutually agree to resolution through binding arbitration for all claims or causes of action . . . that [Western Bagel] may bring against me or that I may bring against [Western Bagel] . . . .' In addition, paragraph 1 states that '[c]laims covered by this Agreement include, [inter alia], . . . any claim arising under . . . state and local anti-discrimination laws, fair employment laws and labor laws, including but not limited to . . . the California Labor Code.'" (*Western Bagel, supra,* 66 Cal.App.5th at p. 656.) The court's use of ellipses renders it impossible for us to determine whether that arbitration agreement sought to apply to all claims, whether or not they arose from the plaintiff's employment or termination. *Western Bagel* is thus not instructive in determining whether Cook's arbitration agreement is unconscionable.

We recognize that employment contracts can provide a "margin of safety" that grants extra protection to the party with superior bargaining power if there is a legitimate commercial need for doing so. (*Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1536 (*Stirlen*).) However, unless the "business realities" that give rise to that special need are explained in the contract itself, they must be factually established. (*Ibid.*) USC attempts to avail itself of this margin of safety. It argues the broad scope of Cook's agreement is justified because if the scope were limited to claims arising out of Cook's employment, then "important categories of future claims, such as post-termination retaliation or defamation" would be excluded from the agreement.

When the claimed justification is not spelled out in the arbitration agreement and was not raised as an issue before the trial court by way of

14

either argument or evidence, the argument will not be considered for the first time on appeal.  (*In re Marriage of Nassimi* (2016) 3 Cal.App.5th 667, 695 ["""theories not raised in the trial court cannot be asserted for the first time on appeal"""]; *Bocanegra v. Jakubowski* (2015) 241 Cal.App.4th 848, 857 ["""a party is not permitted to change its position on appeal and raise new issues not presented in the trial court"""].)  Here, the arbitration agreement does not spell out any need for the broad scope and USC did not make any attempt to factually establish this need in the trial court.  Accordingly, USC has not established a legitimate justification for the broad scope of the arbitration agreement.

Even considering this argument on its merits, we find it unpersuasive. The arbitration agreement drafted by USC applies to all claims "whether or not arising out of Employee's University employment, remuneration or termination."  If USC had been concerned about capturing termination or retaliation claims related to Cook's employment, it simply could have limited the scope of the agreement to claims arising out of or relating to her employment or termination.  It is difficult to see how it is justified to expect Cook—as a condition of her employment at the university—to give up the right to ever sue a USC employee in court for defamatory statements or other claims that are completely unrelated to Cook's employment.

We find the trial court did not err in holding that the agreement's broad scope is substantively unconscionable.


b.     *Duration*

The trial court also found the arbitration agreement was unconscionable because it survived indefinitely following Cook's termination from USC.  The agreement expressly states that it "shall survive the

15

termination of Employee's employment, and may only be revoked or modified in a written document that expressly refers to the 'Agreement to Arbitrate Claims' and is signed by the President of the University."

On appeal, USC argues the agreement cannot be construed as indefinite and instead should be construed to be terminable at will after a "reasonable time." USC has forfeited this argument by failing to raise it in the trial court. As USC recognizes in its opening brief on appeal, "'Failure to raise specific challenges in the trial court forfeits the claim on appeal.' *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564."

Addressing the substance of this argument would not help USC. In making this argument, it relies on *Reigelsperger v. Siller* (2007) 40 Cal.4th 574, 580 (*Reigelsperger*) to demonstrate contracts that do not specify a term of duration are terminable at will. We do not dispute the accuracy of this general statement. However, USC has not shown the rule applies to the arbitration agreement here. The *Reigelsperger* court relied on *Zee Medical Distributor Assn. Inc. v. Zee Medical, Inc.* (2000) 80 Cal.App.4th 1 (*Zee*), which is instructive. *Zee* stated the general rule that a contract will only be deemed terminable at will after a reasonable period of time if it has neither an express nor implied term of duration. (*Id.* at p. 10.) The contract at issue in *Zee* contained a provision stating the contract "shall continue" until specified grounds for termination arose. (*Ibid.*) The court rejected the argument that the contract was terminable at will because it did not identify a specific end date and instead held the contract contained "a valid, express contractual term of duration." (*Ibid.*) The *Zee* court also noted that the termination provisions in the contract "clearly indicate the parties did not contemplate termination at will." (*Id.* at p. 11.)

16

The same is true here.  The arbitration agreement specifically provides that it will survive unless and until Cook and USC's president specifically terminate the agreement in a writing, signed by both parties, which expressly mentions the arbitration agreement.  As in *Zee*, this is an express term of duration; thus *Reigelsperger* does not apply.  However, the inclusion of such language also shows the parties did not contemplate that the arbitration agreement would be terminable at will.

We reject the argument that the arbitration agreement is terminable at will after a reasonable time and find the trial court did not err in holding the duration of the arbitration agreement is substantively unconscionable.


      c.     *Lack of Mutuality*

The trial court also found the agreement was unconscionable because it lacked mutuality.  The agreement requires Cook to arbitrate any and all claims she may have against USC "or any of its related entities, including but not limited to faculty practice plans, or its or their officers, trustees, administrators, employees or agents, in their capacity as such or otherwise." However, the agreement does not require USC's "related entities" to arbitrate their claims against Cook.

USC argues that both federal and California caselaw have recognized that nonsignatories may enforce arbitration agreements as third-party beneficiaries, and the agreement cannot be unconscionable simply because it provides benefits to third parties.  The concern here is not that the arbitration agreement provides ancillary benefits to third parties.  The concern is that the agreement provides benefits to broad swaths of third-party beneficiaries only in favor of USC without any showing of justification for this one-sided treatment.  This confers a benefit on USC and its broadly-

17

defined "related entities" that is not mutually afforded to Cook. USC does not attempt to justify this one-sidedness. No explanation is offered as to why Cook should be required to give up the ability to ever bring claims in court against a USC employee that are unrelated to USC or her employment there.

Seizing on language from *Armendariz*, USC argues the arbitration agreement contains a "modicum of bilaterality" because USC itself has agreed to arbitrate its claims against Cook. The *Armendariz* court adopted the modicum of bilaterality rule enunciated in *Stirlen*. (*Armendariz, supra*, 24 Cal.4th at p. 118.) *Stirlen*, in turn, borrowed the phrase from *Saika v. Gold* (1996) 49 Cal.App.4th 1074 (*Saika*). (*Stirlen, supra*, 51 Cal.App.4th at p. 1542.) *Saika* concerned an arbitration agreement between a doctor and a patient. (*Saika*, 49 Cal.App.4th at p. 1076.) The agreement contained a trial de novo clause which allowed either party to disregard the results of the arbitration and litigate in the courts when the arbitration award exceeded $25,000. (*Ibid*.) The court found the clause afforded the parties with a "modicum of bilaterality" because either the patient or the doctor could enforce it. (*Id*. at p. 1079.) However, the court determined the provision was nonetheless unconscionable because the clause was "virtually meaningless" to patients because—absent certain rare circumstances—they would have little incentive to seek a trial de novo when they had won an award of damages in arbitration. (*Ibid*.) The trial de novo clause was, for all practical purposes, one-sided in favor of the doctor.

Under *Armendariz*, a modicum of bilaterality is required in arbitration agreements. Still, nothing in *Armendariz* supports the conclusion that the presence of a modicum of bilaterality renders an agreement per se conscionable. The presence of a modicum of bilaterality will not save a clause that is, in practical effect, unjustifiably one-sided. There is no question that

18

it is more difficult for a party to enforce an arbitration agreement against a nonsignatory than it is for a nonsignatory to enforce an arbitration agreement against a party. This is intentional, as arbitration is "a voluntary means of resolving disputes, and this voluntariness has been its bedrock justification." (*Armendariz, supra*, 24 Cal.4th at p. 115.) "Arbitration is consensual in nature. The fundamental assumption of arbitration is that it may be invoked as an alternative to the settlement of disputes by means other than the judicial process solely because all parties have chosen to arbitrate them. [Citations.] Even the strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement or who have not authorized anyone to act for them in executing such an agreement." (*County of Contra Costa v. Kaiser Foundation Health Plan, Inc.* (1996) 47 Cal.App.4th 237, 244–245 (*Contra Costa*).)

As a result, nonsignatories may enforce an arbitration agreement against a party to the agreement simply by showing they are intended third-party beneficiaries of the arbitration agreement. (*Ford Motor Warranty Cases* (2023) 89 Cal.App.5th 1324, 1336–1337.) Where the agreement requires arbitration of claims against certain classes of third parties, nonsignatories can make "a prima facie showing sufficient to allow them to enforce the arbitration clause as third party beneficiaries" simply by showing they fall within one of the classes of beneficiaries identified by the contract. (*Ronay Family Limited Partnership v. Tweed* (2013) 216 Cal.App.4th 830, 839 [holding nonsignatories could enforce arbitration agreement because they acted as agents and representatives of a signatory and the agreement expressly required arbitration of claims against such agents and representatives].)

19

Conversely, for Cook to enforce the arbitration agreement against USC's agents or employees as third-party beneficiaries, she would have to show they actually accepted a benefit under the agreement. (See, e.g., *NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 78; *Contra Costa, supra*, 47 Cal.App.4th at p. 242; *Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1513; *Medical Staff of Doctors Medical Center in Modesto v. Kamil* (2005) 132 Cal.App.4th 679, 686.) It is difficult to imagine how Cook could carry this burden to compel USC's employees and agents to arbitration unless those specific agents or employees first moved to compel arbitration under the agreement. While it is theoretically possible for Cook to make this showing, it is unlikely. (*Saika*, 49 Cal.App.4th at p. 1079 [holding a bilateral trial de novo clause was unconscionable where it was unlikely to provide any benefit to one side of the contract].)

The plain language of the arbitration agreement thus provides a significant benefit to USC's related entities without any reciprocal benefit to Cook.

USC has offered no justification for this one-sided treatment. (*Armendariz, supra*, 24 Cal.4th at pp. 117–118 ["As has been recognized "'unconscionability turns not only on a 'one-sided' result, but also on an absence of 'justification' for it.'"].) We find the trial court did not err in holding the arbitration agreement was substantively unconscionable for lack of mutuality in the claims that are subject to arbitration.

C. *Severability*

"An unconscionable contractual term may be severed and the resulting agreement enforced, unless the agreement is permeated by an unlawful purpose, or severance would require a court to augment the agreement with

20

additional terms. [Citation.]" (*Penilla v. Westmont Corp.* (2016) 3 Cal.App.5th 205, 223.) Severance may be properly denied when the agreement contains more than one unconscionable provision, and "'there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement.' [Citation.]" (*Baxter v. Genworth North America Corp.* (2017) 16 Cal.App.5th 713, 738.) "We review a trial court's order declining to sever the unconscionable provisions from an arbitration agreement for abuse of discretion." (*Lange v. Monster Energy Co.* (2020) 46 Cal.App.5th 436, 453, citing *Armendariz, supra*, 24 Cal.4th at p. 124.) "'A ruling amounts to an abuse of discretion when it exceeds the bounds of reason, and the burden is on the party complaining to establish that discretion was abused.'" (*Workman v. Colichman* (2019) 33 Cal.App.5th 1039, 1056.)

As discussed above, three aspects of the agreement are unconscionable. USC argues the trial court abused its discretion in refusing to sever the unconscionable provisions and enforce the remainder of the arbitration agreement. It contends the trial court abused its discretion in finding the number of unconscionable terms to be dispositive on the issue of severance. It argues the trial court erred in not considering whether the central purpose of the agreement could be preserved through severance. We find these arguments unpersuasive.

As an initial matter, we disagree with USC's characterization of the agreement's purpose. It claims "the central purpose of the Arbitration Agreement is to have nearly all employment related disputes resolved through arbitration." This characterization is expressly belied by the plain language of the agreement itself. The agreement's purpose is not directed

21

only at disputes related to Cook's employment but instead requires Cook to arbitrate claims that do not relate to her employment or her employer.

We also disagree with USC's characterization of the trial court's ruling. The court did not simply end its severability analysis at finding there were multiple unconscionable provisions in the agreement. Rather, the court expressly considered the central purpose of the agreement in determining it was permeated with unconscionability, stating "as it stands, the arbitration agreement is tainted with unconscionability because its central purpose appears to be the ability for the parties to arbitrate all possible disputes between each other, for an indefinite period of time, with USC able to move for arbitration of claims against it and its related entities, but Plaintiff only able to move for arbitration of claims by USC against her." There is no question that the trial court explicitly considered the central purpose of the agreement in ruling on severability.

The trial court also determined that curing the unconscionable provisions would require substantive rewriting of the arbitration agreement to contradict its plain language, and that severance would provide a windfall to USC. We find the trial court could have reasonably concluded that "[s]uch multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Armendariz, supra*, 24 Cal.4th 83 at p. 124.) The trial court's finding that unconscionability permeated the arbitration agreement as a whole, and its refusal to sever the unconscionable provisions, was a reasonable exercise of its discretion. The trial court was not required to sever the offending provisions and enforce the remainder of the arbitration agreement.

22

## DISPOSITION

The trial court's order denying USC's motion to compel arbitration is affirmed.  Cook is awarded her costs on appeal.

**CERTIFIED FOR PUBLICATION**


ZUKIN, J.

WE CONCUR:


COLLINS, Acting P. J.


MORI, J.